**FAIRFIELD GLOVES et al.**

v.

**UNITED STATES.**

C.R.D. 76–10; Court Nos. 76–1–00301, etc.

United States Customs Court.

Oct. 15, 1976.

Glad, Tuttle & White, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiffs.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (Edmund F. Schmidt, New York City, trial atty.), for defendant.

RICHARDSON, Judge:

On January 30, 1976 the clerk of the Customs Court received by certified mail from plaintiffs' counsel summonses and filing fees in five cases which were required to be filed January 28, 1976. The certified mail envelope containing the summonses and filing fees did not contain a postmark date. Plaintiffs' counsel made an affidavit that they were mailed by certified mail January 28, 1976, and attached to his motion to have the date of filing corrected to January 28, 1976 (the 180th day after the denial of the plaintiffs' protests), as an exhibit, his receipt for certified mailing which is date-stamped January 28, 1976.

The defendant accepts January 28, 1976 as the date of certified mailing, but challenges the validity of rule 3.2(b) which does not require that the date of physical receipt of the summons by the clerk be the only acceptable *method* or *manner* of filing, and deems the summonses as filed on the date of certified mailing. The defendant con-

tends that the summonses were not filed until physically received by the clerk of court, January 30, 1976 (182 days after the denial of plaintiffs' protests), and that the court was acting *ultra vires* when it adopted rule 3.2(b); and in the defendant's opinion enlarged the statutory jurisdiction of the court. In a cross-motion the defendant moved that the plaintiffs' five "actions" (four of which it regarded as untimely filed) be suspended pending the final determination of *Gotham Knitting Mills, Inc. v. United States,* Customs Court No. 75–10–02525.

Because the defendant was in effect seeking by its cross-motion to suspend "motions" rather than "actions" which it contended were untimely filed, and there is no provision in the statutes or rules for suspending one motion pending the final determination of another motion, and the controversy which arose over whether motions challenging the validity of court rules should be determined by a single judge or a panel of three judges, the court elected to hold in abeyance the action on the motion and cross-motion pending disposition of the *Gotham Knitting Mills, Inc.* case.

Before any ruling was made by the Customs Court on rule 3.2(b) in the *Gotham Knitting Mills, Inc.* case, the plaintiff acting under rule 8.3(a)(1), which permits a plaintiff to abandon its action without order of court at any time before service of a notice of trial, duly abandoned its action, while a petition for a writ of prohibition by the defendant against a three-judge panel passing upon the validity of rule 3.2(b) was pending in the Court of Customs and Patent Appeals. The plaintiff's abandonment of its action made the issue of the validity of rule 3.2(b) moot, in the *Gotham Knitting Mills, Inc.* case.

The disposition of the *Gotham Knitting Mills, Inc.* case leaves the issue of the validity of rule 3.2(b) still unresolved.

The nature of the Customs Court as a national court presupposes that there must necessarily be mailings of summonses from a large number of geographical areas. There are numerous varieties of ways in which letters are processed in the postal service today resulting in difficulties of determining the exact date a letter is deposited in the mails addressed to the clerk of the United States Customs Court.

1. Many letters deposited in the mails today contain only the name of the city and state in which the letter was deposited, with no date.

2. Some machines do not show the city and state in which the letter was deposited or the date.

3. The date stamped is not clear on some letters.

4. Some mail contains the city and date stamp but it in fact may not start to travel from that city where deposited to the destination indicated until several days after deposit. For instance, a letter date-stamped in New Rochelle or Pelham, New York, is sent to Mount Vernon, New York, for sorting and dispatching. This is known as zone sorting, which can delay actual travel of the letter to the addressee from the date of deposit.

5. The failure to put the zip code on an envelope delays the processing as the computer will reject a letter without the zip code and such letter may be laid aside for a day or two until someone ascertains the zip code and places it on the envelope by hand.

6. Postage meter machines which may be used by some persons sending mail to the court can be adjusted to show a date other than the actual date of mailing.

7. The time it takes a letter to travel from place of deposit to destination, these days, is such a variable that it is sometimes very difficult, if not impossible, to determine what is the "ordinary course of mail".

It is common knowledge that mail service has deteriorated considerably in recent years. A person using the mails today can no longer estimate with any degree of consistency when a letter he deposits in the mails might reach the addressee. The Customs Court was aware of this situation and felt that the former rule of the court 3.2(d)(3) which permitted a correction of the

date of filing a summons upon a showing by satisfactory proof:

> . . . that the summons was sent by registered or certified mail, properly addressed to the clerk of the court . . . with return receipt requested; that it was deposited in the mail sufficiently in advance of the last date allowed for filing to provide for receipt by the clerk on or before such date in the ordinary course of mail; and that the person sending the summons exercised no control over the mailing between the deposit of the summons in the mail and its delivery.

worked a hardship particularly on lawyers at outports to have to travel to New York to present proof of timely mailing. Also, it placed a heavy burden upon the court to constantly have to decide whether a summons was filed within such reasonable time as to have been received in fact by the clerk before the last date for filing had passed, upon muddied evidentiary situations due to varied handling of the mails and irregular deliveries of the postal service, or permit injustice to take its toll because of the uncertainty of the mail situation.

After considerable study of the rules of the Customs Court by its Rules Committee and consultation with representatives of the Customs Bar and the Department of Justice, the Customs Court deleted rule 3.2(d)(3) and unanimously adopted the rule in issue, rule 3.2(b), with full knowledge of the Department of Justice's argument that by rule 3.2(b) the court would be extending its jurisdiction and acting *ultra vires.*

Rule 3.2(b) was proposed and adopted to obviate injustices which would result in rigidly adhering to a single interpretation of the word "filing" to mean actual physical presence and receipt of a required summons in the hands or office of the clerk of the court on a given day, in view of the postal service situation.

The important consideration when an issue is raised as to service of any document is whether it was made within the contemplation of the statute and rules of the court.

28 U.S.C.A, section 2631(a) provides:

An action over which the court has jurisdiction under section 1582(a) of this title is barred unless *commenced* within one hundred and eighty days after:

> (1) the date of mailing of notice of denial, in whole or in part, of a protest . . . . [Emphasis added.]

28 U.S.C.A., section 2632(a) provides:

. . . A civil action shall be *commenced by filing a summons in the . . . manner, . . . prescribed in rules adopted by the court.* [Emphasis added.]

Rule 3.2(b) provides: "For purposes of *commencement* of an action, a summons sent by registered or certified mail properly addressed to the clerk of the court at One Federal Plaza, New York, New York 10007, with the proper postage affixed and return receipt requested, shall be *deemed filed* as of the date of postmark." (Emphasis added.)

It is the opinion of the court that section 2631 does not say that anything shall be "filed" within 180 days; the words "file", "filed" and "filing" are not in that section. It just says an action shall be *"commenced"* within 180 days. It does not say *how* an action is to be commenced. Section 2632(a) says *how* an action shall be commenced and that is by filing a summons in the *"manner"* *prescribed in rules adopted by the court.* The word *"manner"* is defined in Black's Law Dictionary, Fourth Edition, 1951, at page 1115, as: "A way, mode, *method* of doing anything, or mode of proceeding in any case or situation." (Emphasis added.)

■ It is submitted that section 2632(a) delegates to the Customs Court the authority to prescribe in its rules the *"manner"* or *method* of filing a summons. The statute does not prescribe that the summons be "filed with" any specified person. Congress could have specified that "filing shall be with the clerk", but it chose to delegate authority to the Customs Court to determine the "manner" of filing the court deemed best in the light of its experience with procedures under the Customs Courts Act of 1970. Judge Newman in an opinion in *Texas Mex Brick & Import Co. v. United*

*States,* 72 Cust.Ct. 291, 294, C.R.D. 74–2, 371 F.Supp. 579 (1974), a case under the former rule 3.2(d)(3) permitting a correction of the date of filing a summons upon satisfactory proof, stated: "I am clear that this court has authority to explicitly provide that something other than receipt may constitute the filing of the summons, particularly since under § 2632(a) Congress specifically authorized this court to adopt rules governing the 'manner' of filing a summons."

Judge Maletz in following *Texas Mex* in *Modern Clothing, Inc. v. United States,* 73 Cust.Ct. 233, 236, C.R.D. 74–10 (1974), expressed his view as being "in entire accord with the decision in *Texas Mex* and therefore hold that rule 3.2(d)(3) is a statutorily valid exercise of the court's authority."

The court in rule 3.2 has exercised its delegated authority by providing that a plaintiff may *"commence"* an action in two *"manners"* or *"methods"*: (1) physically filing a summons with the clerk of court or (2) using registered or certified mail to send a summons to the court as provided in subparagraph (b) of said rule and it will be "deemed filed" as of the date of postmark.

*"Deemed"* is defined in Black's Law Dictionary as: "To hold; consider; adjudge; . . . determine; treat as if; construe."

The word "deemed" has been used to go so far as to treat a summons as timely filed when there wasn't even a summons in existence in the case. See section 122(c) of Pub.L. No. 91–271:

> (c) A protest timely filed with the Bureau of Customs before the effective date of enactment of this Act, which is disallowed before that date, and as to which trial has not commenced by such date, shall be *deemed to have had a summons timely and properly filed* under this title. [Emphasis added.]

Rule 22(2) of the Supreme Court of the United States provides in part that:

> . . . If the original judgment in such a case was entered in a district court in Alaska, Guam, Hawaii, Puerto Rico, the Virgin Islands, or the Canal Zone, the petition [for certiorari] shall be *deemed filed in time if mailed by air-mail under a postmark dated within the thirty-day period or due extension thereof.* [Emphasis added.]

Federal, New York State and New York City income tax returns have to be filed each year on April 15, but mailing on the 15th is *deemed filed* on the 15th, in all three jurisdictions.

Rule 3.2(b) does not extend the statutory period for *filing* a summons, since if the requisites of specified mailing are complied with, the summons is *deemed* filed (viz., on the last date allowed under section 2631(a)(1).

Admittedly there are decisions in courts of appeals applying, in general, a strict construction of the provisions in customs laws fixing the time in which appeals or other documents must be filed with such courts. Among such cases is *United States v. Thompson-Starrett Co.,* 12 Ct.Cust.App. 28, T.D. 39896 (1923), in which the time for filing an appeal, sixty days, expired on April 1, 1923, a Sunday, and the plaintiff deposited its notice of appeal in the mail in New York City addressed to the clerk of the Court of Customs Appeals in Washington, D.C., on March 31, 1923, a Saturday; and the appeal was received in the office of the clerk on April 2, 1923, a Monday, which was the sixty-first day after the entering of judgment.

The Tariff Act of 1922, section 515, title IV, in effect when the *Thompson-Starrett* case was decided provided that:

> . . . an appeal shall be filed in the United States Court of Customs Appeals *within the time and in the manner* provided by law. [12 Ct.Cust.Appls. at p. 29.] [Emphasis is added to indicate the statute makes abundantly clear that "time" and "manner" are not synonymous.]

The court held that the mailing of an application for appeal *within the time* allowed for appeal was not *in the manner* of filing prescribed by the statute, and that it was incumbent upon an appellant to have the application for appeal in the office of

the clerk of the court within the time allowed. The statute expressly prescribed that an appeal shall be "filed in the United States Court of Customs Appeals." The court recognized, however, that "depositing in the mail is sufficient filing" provided that statute treats mailing as filing. 12 Ct.Cust.Appls. at p. 31.

The Court of Customs and Patent Appeals followed the *Thompson-Starrett* case in *Minkap of California, Inc. v. United States*, 55 CCPA 1, C.A.D. 926 (1967), a case in which a motion for rehearing was mailed within a thirty-day time limitation, but not received by the clerk until after the expiration of the thirty-day time limitation. The statute involved required a motion for rehearing to be "made" within thirty days and the term "made" was construed to mean "filed". The court regarded the situation in the *Minkap* case as analogous to the *Thompson-Starrett* case and at page 3 reiterated that depositing in the mail will not be regarded as sufficient filing and compliance with a statute which prescribes that filing must be at a definite place and within a specified time.

In another case, *Seneca Grape Juice Corp. v. United States*, 61 CCPA 118, 492 F.2d 1235 (1974), the Court of Customs and Patent Appeals denied a petitioner's motion to have a notice of appeal, postmarked in New York City, January 25, 1974, and received in the clerk's office on January 29, 1974, one day later than the sixty-day period for filing notices of appeal, accepted *nunc pro tunc* as of January 28, 1974. The appellate court in a per curiam opinion, followed its decision in *Minkap of California, Inc. v. United States*, and stated that its rule 3.1(a) requires that a notice of appeal must be filed "in the office of the clerk of the court", and that rule 25(a) of the Federal Rules of Appellate Procedure provides that filing may be accomplished by mail addressed to the clerk but "filing shall not be timely unless the papers are *received by the clerk* within the time fixed for filing. . . ."

■ The foregoing two rules do not contain a provision similar to that in rule 3.2(b) of the Customs Court, and the second rule, rule 25(a) of the Federal Rules of Appellate Procedure expressly requires receipt by the clerk of a notice of appeal within the time fixed for filing. It is submitted that what constitutes filing under rules of federal appellate procedure is to be distinguished from what constitutes filing under the rules of the Customs Court.

■ In the *Thompson-Starrett* case, the *Minkap* case, and the *Seneca Grape Juice* case there was no statute involved, as in the instant case, delegating authority to the court to promulgate by rule of court the *manner* or method of filing an appeal, nor was there any rule of court, pursuant to such delegation of authority, in existence recognizing mailing as an alternate *manner* or method of filing an appeal. It is submitted that in 1970 when Congress enacted 28 U.S.C.A. § 2632(a), delegating to the Customs Court authority to provide in its rules the "manner" of filing a summons, it must have contemplated that the Customs Court might provide for the alternate "manner" of filing recognized as proper, if duly authorized, in the *Thompson-Starrett* case—namely mailing. Rules of court adopted in conformity with authority delegated by statute to make rules of practice, pleading, and procedure have the same force and effect as if expressly included in the statute. *District of Columbia v. Hunt*, 82 U.S.App.D.C. 159, 163 F.2d 833 (1947); *MacNeil v. Hearst Corp.*, 160 F.Supp. 157 (D.Del.1958); *Carlis v. Stratigos*, 186 Misc. 337, 61 N.Y.S.2d 456 (N.Y.Sup.1946).

Between the time the *Thompson-Starrett* case was decided in 1923 and the enactment of 28 U.S.C.A. § 2632(a), in 1970, the federal trial courts had adopted what has sometimes been described as a liberal approach in the application of periods of limitation in their rules and decisions.

The Federal Rules of Civil Procedure in rule 6(a) promulgated pursuant to 28 U.S. C.A. § 2072 provides that when the last day for taking an action expires on a Saturday, a Sunday, or a legal holiday, the statutory period runs until the end of the next day which is neither a Saturday, a Sunday, nor

a holiday. Many federal court decisions prior to this rule were to the contrary.

The Court of Appeals for the Fifth Circuit in construing this rule in *Wilson v. Southern Ry. Co.*, 147 F.2d 165 (5 Cir. 1945) said at page 166:

> . . . The committee reports and discussions preliminary to the formulation of the rules indicate that the purpose was to change the *method* of computing the three-month period prescribed by the statute under consideration, and the language of the rule clearly effectuates that intent. The rule does not attempt to change a jurisdictional statute, but merely provides a *method of computing the statutory period* different from that fixed by judicial decision. . . . [Emphasis added.]

Other decisions to the same effect are: *Jacobs Pharmacy Co., Inc. v. United States*, 71 F.Supp. 584 (N.D.Ga.1947) and *Union National Bank v. Lamb*, 337 U.S. 38, 69 S.Ct. 911, 93 L.Ed. 1190 (1949). In the latter case at pages 40–41, 69 S.Ct. 911, 912 Mr. Justice Douglas held that where the last day of the period within which a review by certiorari might be filed falls on a Sunday or legal holiday, a filing on the next day which is not a Sunday or legal holiday is timely. Mr. Justice Douglas stated: "That rule [6(a), a rule of the district courts] provides the *method* for computation of *time* prescribed or allowed not only by the rules or by order of court but by 'any applicable statute.' " (Emphasis added.) He further stated: ". . . we think that the considerations of liberality and leniency which find expression in Rule 6(a) are equally applicable to 28 U.S.C. § 2101(c) [with respect to petitions for certiorari]. The appeal therefore did not fail for lack of timeliness."

The Customs Court in a decision in 1952, *Thalson Co. v. United States*, 28 Cust.Ct. 536, R.D. 8080, followed the liberal approach in the application of periods of limitation as reflected in rule 6(a) of the federal rules, in a situation where the time for filing an appeal for a reappraisement (30 days) expired under the Tariff Act of 1930

on August 23, 1947, a Saturday, and the court held its receipt on the next day that the office was regularly open for business August 25, 1947, a Monday, was timely. This decision was affirmed in a review by the Second Division of the Customs Court in 32 Cust.Ct. 663, A.R.D. 40 (1954). The decision of the *Thalson* case on timeliness was followed in *Hawaiian Oke & Liquors, Ltd. v. United States*, 28 Cust.Ct. 58, C.D. 1388 (1952); *Railway Express Agency, Inc. v. United States*, 30 Cust.Ct. 424, Abs. 57260 (1953); *Lustre Fibers, Inc. v. United States*, 31 Cust.Ct. 318, Abs. 57663 (1953); *F. W. Myers & Co., Inc. v. United States*, 35 Cust.Ct. 38, C.D. 1718 (1955). It was embodied in rule 37 of the Customs Court in 1955. The rule has been consistently followed by the Customs Court for over 21 years, and is now rule 3.6(a).

■ It is the view of this court that rule 3.2(b) is a proper exercise of authority delegated to the Customs Court in 28 U.S.C.A. § 2632(a), and is in line with the liberal approach to periods of limitation reflected in Customs Court rule 3.6(a), Federal Rules of Civil Procedure 6(a), Supreme Court of the United States rule 22(2), and the court decisions under these rules. It is not *ultra vires* and it does not enlarge the statutory jurisdiction of the Customs Court. It is not inconsistent with law and is deemed necessary for the orderly functioning of the Customs Court.

■ There is a reported decision of the Customs Court holding rule 3.2(b) to be invalid in that the rule permits a summons mailed before the expiration of the period for filing, but received after the period for filing, to be deemed filed and thus timely. *Harold Koren & Co., Inc. v. United States*, 76 Cust.Ct., C.D. 4651, 10 Cust.Bul. No. 25, p. 28 (May 26, 1976). This case is not *stare decisis* of the issue of the validity of rule 3.2(b) as the issue in that case had become moot before the judge undertook to decide the case, and the decision is given no weight in this opinion.

The function of a decision is to decide a controversy affecting the rights of some

party to the litigation. Where due to a change in circumstances before decision an actual controversy has ceased to exist and there is no live question to decide, a decision whether or not relief should be granted is an empty formality and of no effect.

Facts extrinsic to the reported decision in the *Koren* case, but part of the official file show the issue in that case to have been moot May 18, 1976, eight days before the date of decision, May 26, 1976.

At a hearing on the *Gotham* case, May 18, 1976, the court made an inquiry of plaintiff's counsel as to what disposition he proposed to make in the *Koren* case, a similar case involving two protests that was not calendared for hearing that day. Plaintiff's counsel responded that " . . . if it is appropriate, your Honor, we would make a motion at this time to have those cases abandoned. If it is not, we will file a Notice of Abandonment." (R. 17.) Defendant opposed abandonment and the court reserved decision on the motion to abandon. Subsequently, on the same day, plaintiff filed a notice of abandonment pursuant to rule 8.3 which led to the dismissal of the case by the clerk on May 21, 1976.

On May 24, 1976, the court took the position that since a motion for leave to abandon was pending, the notice of abandonment filed by plaintiff should not be given effect and that the motion for leave to abandon should be denied, and made the following orders:

ORDERED, that the dismissal of the case entered by the clerk be set aside, and it is further

ORDERED, that plaintiff's motion to abandon this action be and the same hereby is denied, and it is further

ORDERED that the notice of abandonment filed by plaintiff be rejected, and it is further

ORDERED, that the Clerk make the appropriate entries in the docket sheet of this case to reflect the actions taken in this order

Rule 8.3(a)(1) of the Customs Court provides that:

. . . Before service of notice of trial, an action may be voluntarily abandoned and dismissed, without order of court, by filing a notice of abandonment. . . .

Part (iv) of said rule provides that:

(iv) When an action is abandoned by notice of abandonment, the clerk, without order of the court, shall make an appropriate entry of dismissal . . .

There was no notice of trial filed in the *Koren* case, and the plaintiff and clerk did what rule 8.3(a)(1) prescribes to accomplish the dismissal of the case at any time before a notice of trial. Their action ended the trial judge's jurisdiction, and his attempt to resurrect and breathe life into a case after a proper dismissal, without an order to show cause as to why compliance with rule 8.3(a)(1) should not be nullified and the clerk's entry of dismissal should not be opened or vacated, is ineffective. When the plaintiff voluntarily abandoned its action the case became moot.

Ordered that the date on the summonses of filing of the five actions listed on the attached schedule "A" shall be corrected to and hereby is established as being January 28, 1976, and the cross-motion to suspend is denied.

Notwithstanding the disposition made herein the court deems it appropriate to state that it appears that a controlling question of law is involved in this case which contains an issue important to the whole bar and should be decided and resolved with finality at the earliest possible date; and an immediate appeal from this order may materially advance the ultimate determination of the action. Therefore, an interlocutory order is granted for application to be made to the Court of Customs and Patent Appeals for an appeal within 10 days after entry of this order.