M.A. MORTENSON COMPANY,
Plaintiff–Appellee,

v.

The UNITED STATES, Defendant–
Appellant.

No. 92–5104.

United States Court of Appeals,
Federal Circuit.

June 9, 1993.

Ronald A. Schechter, Jones, Day, Reavis & Pogue, Washington, DC, argued for plaintiff-appellee. With him on the brief were Joseph D. West and Rosemary Maxwell.

Shalom Brilliant, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director.

Before RICH, MICHEL and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

The United States appeals from the March 30, 1992 judgment of the United States Claims Court[1] awarding attorney fees and costs against the United States as a sanction for its failure to comply with several discovery orders. Because the United States has waived its sovereign immunity in the Claims Court with respect to this sanction, we affirm.

## I

The single issue raised in this appeal is whether the United States, as defendant in every suit brought in the Claims Court, has waived its sovereign immunity in that court to an award of monetary sanctions pursuant to the court's rules for abusing its discovery orders.

M.A. Mortenson Company filed suit on behalf of itself and several subcontractors in the Claims Court against the Veterans Administration, claiming additional costs of over

---

1. The United States Claims Court is now known as the United States Court of Federal Claims. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516.

twelve million dollars incurred in constructing a hospital in Seattle, Washington. The Claims Court issued an order governing pretrial matters, including discovery, on June 22, 1987. Pursuant to this order, Mortenson served discovery requests on the government in August, 1987. After the government failed to respond thereto, Mortenson filed a motion to compel discovery, and requested attorney fees and costs incurred in the discovery dispute. On January 25, 1988 after a hearing, the Claims Court granted Mortenson's motion to compel, adopted a detailed discovery schedule and deferred ruling on the motion for attorney fees and costs.

The Claims Court again faced the issue of discovery when it became aware that the government had not complied with the discovery timetable set in the court's January 25 order. In response to this information, on March 15, 1988, the court ordered the government "to provide ... full and complete responses to Mortenson's discovery requests on or before April 6, 1988." *M.A. Mortenson Co. v. United States*, Nos. 815–86C, 178–87C, slip op. at 1 (Cl.Ct. Mar. 15, 1988) (order directing compliance with discovery schedule). The court also announced its intention to consider "appropriate financial and evidentiary discovery sanctions should [the government] fail, without adequate reason, to comply with the court's orders." *Id.* at 2.

After a hearing to determine compliance with its orders, the Claims Court found that the government had conceded that three of the four items requested by Mortenson had not been produced. *M.A. Mortenson Co. v. United States*, Nos. 815–86C, 178–87C, slip op. at 1 (Cl.Ct. Apr. 14, 1988) (order granting sanctions). As to the fourth category, the court found the government's responses "incomplete and confusing," "facially contradict[ory]" when compared with the government's admissions and surprisingly brief considering the government's earlier representation that additional time was required because the interrogatories required "a very lengthy and specific type of answer." *Id.* at 8–9. As a consequence of the government's failure to comply with the discovery orders, the Claims Court (i) assessed certain evidentiary sanctions under Rule 37(b)(2) of the

Rules of the United States Claims Court (RUSCC), and (ii) directed the government to pay attorney fees and costs associated with the discovery dispute pursuant to RUSCC 37(a)(4). *Id.* at 10. The amount of the sanction was ultimately set at $21,983, representing the expenses "related to the motion to compel in that they would not have been incurred but for [the government's] lack of diligence in responding to discovery requests and its failure to obey the court's discovery orders." *M.A. Mortenson Co. v. United States*, Nos. 815–86C, 178–87C, slip op. at 1–2 (Cl.Ct. June 15, 1988) (order establishing appropriate sanction amount).

The government stated that the sanction would not be paid unless the amount was entered as a partial judgment against the United States. Upon Mortenson's subsequent motion to have the court enter such a partial judgment, the government raised the issue of sovereign immunity for the first time. The Claims Court rejected the government's position on sovereign immunity in its September 12, 1988 decision, and granted Mortenson's motion. *M.A. Mortenson Co. v. United States*, 15 Cl.Ct. 362 (1988) (order granting partial judgment). First, the court found that sanctions for abusing discovery may be assessed under RUSCC 37 regardless of a lack of any independent statutory or common law basis on which to rely. *Id.* at 363–64. Second, the court determined that Congress, via the Equal Access to Justice Act, had evidenced its intent to place the United States on an equal footing with other parties with respect to an award of attorney fees and costs under Rule 37 of the Federal Rules of Civil Procedure (FRCP), and that the legislative history of the Equal Access to Justice Act and the accompanying repeal of Rule 37(f) "strongly militate against creating a different result under the RUSCC [than under Fed.R.Civ.P. 37]." *Id.* at 365.

The United States' immediate appeal from the entry of partial judgment was dismissed as interlocutory by this court pending entry of final judgment in the case. *M.A. Mortenson Co. v. United States*, 877 F.2d 50, 52 (Fed.Cir.1989). Thereafter, all remaining claims between the parties were settled, and final judgment for $21,983 was entered on

March 30, 1992. The United States timely appealed the judgment to this court.

## II

■ Whether the Claims Court has jurisdiction to entertain certain motions is an issue we review *de novo. Dehne v. United States*, 970 F.2d 890, 892 (Fed.Cir.1992); *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 906 (Fed.Cir.1990). This particular review necessarily involves statutory interpretation, which we likewise review *de novo. Commercial Energies, Inc. v. United States*, 929 F.2d 682, 684 (Fed.Cir.1991); *Pasteur v. United States*, 814 F.2d 624, 626 (Fed.Cir. 1987). Before this court, the government again raises its defense of sovereign immunity, which we address in detail.

■ Under the doctrine of sovereign immunity, the federal government, as this nation's "sovereign," is immune to an award of money damages, except to the extent that the government has explicitly waived such immunity. *Zumerling v. Marsh*, 783 F.2d 1032, 1034 (Fed.Cir.1986). This court is cognizant of the fact that waivers of sovereign immunity are to be construed in favor of the government. *See, e.g., Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986) (waiver of sovereign immunity is construed "strictly in favor of the sovereign"); *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1387 (Fed.Cir.) ("[G]reat care must be taken not to expand liability [of the United States] beyond that which was explicitly consented to by Congress."), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). In this case, however, Congress has indeed waived that immunity.

In 1980, Congress passed the Equal Access to Justice Act, Pub.L. No. 96–481, Title II, 1980 U.S.C.C.A.N. (94 Stat.) 2325 (1980) (EAJA) (codified as amended at various sections of 5 & 28 U.S.C.). As finally enacted, the EAJA separately waived the United States' sovereign immunity for two distinct purposes: (i) to authorize special fee-shifting rules that would encourage individuals and organizations without substantial resources to challenge arbitrary government action; and (ii) to ensure that the United States as a litigant in a civil action would be subject to court-awarded fees to the same extent as would be a private party. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6 (1980) (H.R.Rep. 1418), *reprinted in* 1980 U.S.C.C.A.N. 4953, 4984, 4984.

Embodying the first waiver of immunity, 28 U.S.C. § 2412(d) authorizes awards of fees and other expenses to certain organizations and individuals who satisfy the statutory net-worth requirements and who prevail in their actions against the government, provided both that the government's position was not "substantially justified," and that special circumstances which would render such an award unjust are absent from the case. 28 U.S.C. § 2412(d)(1)(A) (1988). This section is not at issue in the present case.

■ The second waiver of immunity, EAJA § 204(a), 28 U.S.C. § 2412(b) (1988),[2] explicitly waives the government's sovereign immunity in a civil case to an award of reasonable attorney fees "to the same extent [any court having jurisdiction] may presently award such fees against other [private] parties." H.R.Rep. 1418 at 5–6, *reprinted in* 1980 U.S.C.C.A.N. at 4984. Section 2412(b) essentially strips the government of its cloak of immunity with respect to costs and fees and requires it to litigate under the same professional standards applicable to a private litigant. Where a fee provision does not itself specifically authorize an award of fees against the United States, the United States' sovereign immunity is waived by virtue of section 2412(b) for purposes of that fee provision. *See* 1 Mary F. Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 7.04, at 7–32.2(4) (1991).

2. The pertinent language of 28 U.S.C. § 2412(b) reads:

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, ..., to the prevailing party in any civil action brought by or against the United States ... in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

Where the language of a statute is clear, the plain meaning of the language governs interpretation thereof: "[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2055, 64 L.Ed.2d 766 (1980). Where congressional intent would be thwarted absent reference to the legislative history, however, it is permissible to look beyond the specific language used, especially recognizing the Supreme Court's guidance that the EAJA be interpreted "in light of [the EAJA's] manifest purpose." *Sullivan, Secretary of Health & Human Servs. v. Hudson,* 490 U.S. 877, 890, 109 S.Ct. 2248, 2257, 104 L.Ed.2d 941 (1989). This is no less true when attempting to determine the scope of the government's waiver of sovereign immunity. *See, e.g., McDonald's Corp. v. United States,* 926 F.2d 1126, 1129–32 (Fed.Cir.1991) (rejecting the government's position that the plain language of 28 U.S.C. § 1491 must be interpreted without resort to the legislative history of the Tucker Act; Congress' intent was clearly evidenced from the legislative history, and would have been frustrated by a technical reading of the statutory language).

The present case is representative of a situation in which congressional intent is clear, even though imprecisely couched in the statutory phraseology of section 2412(b). The legislative history of the EAJA and the circumstances surrounding the passage thereof demonstrate that the drafters explicitly contemplated recovery of attorney fees against the government under circumstances other than those narrowly revealed by the "terms of any statute" language. The pertinent legislative history reads, in part:

First, [EAJA] amends [section 2412(b) ] to permit a court in its discretion to award attorney fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving private parties. Thus, the United States would be liable for fees under the "bad faith," "common fund," and "common benefit" excep-

tions to the American rule [against fee-shifting]. *Fees may also be recovered against the United States under [R]ule 37 [of the FRCP], which provides for sanctions for failure to make discovery and under the terms of any Federal statute which authorizes awards against private parties unless the statute expressly provides otherwise.* There appears to be no justification for exempting the United States in these situations; the change simply reflects the belief that, at a minimum, the United States should be held to the same standards in litigating as private parties. . . .

S.Rep. No. 253, 96th Cong., 1st Sess. 4 (Star Print 1979) (S.Rep. 253) (Senate Report accompanying S. 265) (emphasis added).

Rule 37 of the FRCP, to which the above passage explicitly refers, provides a federal district court with the authority to award sanctions against a party failing to cooperate during the discovery process. Specifically, Rule 37(a)(4) empowers the court to award "reasonable expenses incurred in obtaining the order [compelling discovery], including attorney's fees" against a party whose position is not "substantially justified" in the discovery dispute. Fed.R.Civ.P. 37(a)(4). By incorporating as an example Rule 37 into section 2412(b), Congress emphasized that there was no longer a need to differentiate between the government and a private litigant in matters relating to awarding fees and costs as a sanction for abusing the discovery process.

By such incorporation of the FRCP into the scope of the EAJA's waiver of sovereign immunity, Congress evidenced that the phrase "terms of any statute" should not be read narrowly. The FRCP were promulgated by the Supreme Court pursuant to statutory authority and implicitly adopted by Congress after transmission thereto of the FRCP in proposed form. *See* 28 U.S.C. § 2071–2074 (1988). In light of this statutory promulgation scheme, the Supreme Court itself has held that the FRCP are deemed to have "the force [and effect] of a federal statute." *Sibbach v. Wilson & Co.,* 312 U.S. 1, 13, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941); *see*

*also* 28 U.S.C. § 2072(b) (1988) ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."). Thus, it is consistent with Congress' intent and the legislative history to interpret "statute" as including the FRCP. *See Adamson v. Bowen,* 855 F.2d 668, 670–72 (10th Cir.1988); 1 Derfner & Wolf, *supra,* ¶ 11.05[4](d)(vi) at 11–131. This conclusion is bolstered by the fact that "[t]he Government as a litigant is, of course, subject to the rules of discovery." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

More than the legislative history, however, evidences Congress' intent to permit a court under the FRCP to assess fees against the United States for abuse of discovery. EAJA § 205(a), 1980 U.S.C.C.A.N. (94 Stat.) at 2330, repealed Rule 37(f) of the FRCP, which had prohibited the imposition of attorney fees on the United States as a discovery sanction except to the extent permitted by statute.[3] *See* Fed.R.Civ.P. 37(f) Note; 4A James W. Moore, *Moore's Federal Practice* ¶ 37.07, at 37–136 (1993). Recognizing that to leave Rule 37(f) intact would be to create a conflict with the EAJA's language, Congress remarked: "This change reflects the belief that the United States should be liable for fees the same as other parties when it abuses discovery." S.Rep. 253 at 22; H.R.Rep. 1418 at 19, *reprinted in* 1980 U.S.C.C.A.N. at 4998.

The government argues that this repeal was necessary because section 2412(b) authorized an award of attorney fees allowable under both statute *and* common law against the United States, and therefore Rule 37(f) as it existed before passage of the EAJA was inconsistent with the EAJA. Though we agree that at a minimum, modification of Rule 37(f) was required so as to avoid any ambiguous conflict with the EAJA, the government's position stops short of the true impact of Congress' actions: The EAJA's repeal of Rule 37(f) not only avoided creating a riddle for the district courts to solve, but also gave the courts authority to rely on Rule 37 *itself* as the equivalent of a statute providing for such an award against the United States for abuse of discovery.

## III

Consistent with this reading of the EAJA is the fact that other circuit courts have employed the FRCP as vehicles for sanctioning the United States for various abuses of the litigative process. *See, e.g., Adamson,* 855 F.2d at 672 (EAJA waived sovereign immunity to an award of fees pursuant to Fed.R.Civ.P. 11); *United States v. Gavilan Joint Community College Dist.,* 849 F.2d 1246, 1251 (9th Cir.1988) (sovereign immunity does not prohibit award under Fed. R.Civ.P. 11); *United States v. National Med. Enters., Inc.,* 792 F.2d 906, 910–11 (9th Cir. 1986) (affirming award of fees against the government under Fed.R.Civ.P. 37); *Schanen v. United States Dep't of Justice,* 798 F.2d 348, 350 (9th Cir.1986) (approving an assessment of fees and costs against the government for failure properly to defend a Fed. R.Civ.P. 60(b) motion); *Andrulonis v. United States,* 724 F.Supp. 1421, 1537 (N.D.N.Y. 1989) (limitations of sovereign immunity did not preclude consideration of sanctions against the United States under Fed.R.Civ.P. 11), *aff'd in part & rev'd in part on other grounds,* 924 F.2d 1210 (2d Cir.), *vacated,* —— U.S. ——, 112 S.Ct. 39, 116 L.Ed.2d 18 op. *reinstated,* 952 F.2d 652 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2992, 120 L.Ed.2d 869 (1992); *National Lawyers Guild v. Attorney General,* 94 F.R.D. 600, 615 n. 32 (S.D.N.Y.1982) (award of fees as a Fed.R.Civ.P. 37(b) sanction: "The legislative history of [the EAJA] is strewn with references to the United States and its agencies' abuse of the litigation process, and Congress expressed, through this law, the judgment that the Government may not be treated differently from other litigants."); *see also Mattingly v. United States,* 939 F.2d 816, 818 (9th Cir.1991) ("Since Congress authorized the promulgation of [the FRCP], applying them to the government with full force cannot be said to violate the principles of sovereign immunity."); *Barry v. Bowen,* 884 F.2d 442, 444 (9th Cir.1989) (FRCP "can be

---

**3.** Rule 37(f) had read: *"Expenses Against United States.* Except to the extent permitted by statute,

expenses and fees may not be awarded against the United States under [Rule 37]."

viewed as an explicit waiver of sovereign immunity"). Various courts have also relied upon procedural rules other than the FRCP, yet promulgated by the Supreme Court pursuant to 28 U.S.C. §§ 2072 & 2075, in assessing monetary sanctions against the United States. *See, e.g., In re Good Hope Indus., Inc.*, 886 F.2d 480, 482 (1st Cir.1989) ("It is not [the court's own procedural rule] that by itself waives the government's sovereign immunity. Rather, it is section 2412(b) that waives the government's sovereign immunity for purposes of [Fed.R.App.P. 38]."); *In re Dorman*, 98 B.R. 560, 572 (Bankr.D.Kan. 1987) (EAJA waives sovereign immunity to sanctions under Bankruptcy Rule 7037, which incorporates Fed.R.Civ.P. 37).

## IV

■ In the present case, it is clear that the Claims Court qualifies as a "court having jurisdiction of such [civil] action." Mortenson brought its cause of action under both the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988), under which the Claims Court shall hear "any claim against the United States founded ... upon ... any express or implied contract with the United States....", and the Contract Disputes Act of 1978, Pub.L. No. 95–563, 92 Stat. 2383 (codified at 41 U.S.C. §§ 601–613 (1988)). Since Mortenson claimed increased costs in excess of $10,000 incurred as a result of performing a contract with the federal government, its cause of action fell within the competent and exclusive jurisdiction of the Claims Court. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1) (1988). The Claims Court therefore falls within the statutory language of section 2412(b). *Cf. Essex Electro Engineers, Inc. v. United States*, 757 F.2d 247, 250–52 (Fed.Cir.1985) (Claims Court qualifies as a "court having jurisdiction of such [civil] action" within section 2412(d)).

The government nevertheless contends that the Claims Court acted without jurisdiction with regard to the award of attorney fees and costs. It argues that the court awarded the discovery sanction against the United States pursuant to its own rules of procedure, the RUSCC, rather than the FRCP; that RUSCC 37 is not a "statute which specifically provides for such an award" under 28 U.S.C. § 2412(b); and that therefore the government has not waived its sovereign immunity to such an award. In essence, the government's position is that because the abuse of discovery occurred in the Claims Court, the court in which the government appears in one hundred percent of cases, the government cannot therein be held to the same high standards of behavior to which private litigants are held, and to which it uniformly is held in other federal courts. Presumably, the government's argument extends to all of the fee-shifting provisions in the Claims Court's rules, such that the United States

> could not be sanctioned under [RUSCC] 11 for violation of signature requirements, under [RUSCC] 16(f) for failure to abide by a pretrial order, under [RUSCC] 26(g) for abusive discovery, under [RUSCC] 30(g) for failure to attend a deposition, under [RUSCC] 37(c) for improper failure to admit, or under [RUSCC] 56(h) for making an affidavit in bad faith.

*M.A. Mortenson Co.*, 15 Cl.Ct. at 364. We disagree with the government's contention.

Acting pursuant to 28 U.S.C. § 2503(b) (1988), which codified congressional authority for the Claims Court to prescribe its own rules of practice and procedure, the Claims Court promulgated RUSCC 37(a)(4), which adopted in pertinent part the *entirety* of Rule 37(a)(4) of the FRCP. *See, e.g., Croskey v. United States*, 24 Cl.Ct. 420, 422 n. 2 (1991) (RUSCC 15(a) "mirrors, in all material aspects, [Fed.R.Civ.P.] 15(a)"); *United States v. Singleton*, 91 B.R. 604, 608–09 (Bankr. N.D.Fla.1988) (Bankruptcy Rule 9011 "adopts [Fed.R.Civ.P. 11] with minor changes to make the text of the rule appropriate to bankruptcy cases."). Thus, unlike the United States district courts, which lack the power to promulgate their own rules, 28 U.S.C. §§ 2071, 2072 (1988), Congress authorized the Claims Court to adopt its rules without the need for supervisory or statutory oversight.

■ It is well established that a court's procedural rules promulgated pursuant to statutory authorization are deemed to have the force and effect of law. *See, e.g., Weil v. Neary*, 278 U.S. 160, 169, 49 S.Ct. 144, 148,

73 L.Ed. 243 (1929) (citing *Rio Grande Irrigation & Colonization Co. v. Gildersleeve,* 174 U.S. 603, 608, 19 S.Ct. 761, 762, 43 L.Ed. 1103 (1899)); *Fairfield Gloves v. United States,* 73 F.R.D. 133, 138 (Cust.Ct.1976) ("Rules of court adopted in conformity with authority delegated by statute to make rules of practice, pleading, and procedure have the same force and effect as if expressly included in the statute."), *aff'd,* 558 F.2d 1023 (CCPA 1977). This position is only strengthened when the rule in question specifically adopts its corresponding FRCP, which itself was proposed by the Supreme Court and implicitly adopted by Congress. More important, however, is the fact that the rule, once adopted by the court, is binding on both the court and the parties litigating before the court, such that a party other than the United States would be liable under that rule. Thus, under the statutory language of section 2412(b), the government must also be held liable, since the "United States shall be liable for such fees and expenses to the same extent that any other party would be."

In light of the above analysis and Congress' intention that a court be allowed "in its discretion to award fees against the United States to the same extent it may presently award such fees against other parties," H.R.Rep. 1418 at 6, *reprinted in* 1980 U.S.C.C.A.N. at 4984, we find no basis on which to differentiate between the abilities of the federal district courts and the Claims Court to award monetary sanctions for abuse of discovery against the United States pursuant to either the FRCP or the RUSCC. Further, we emphasize and embrace the precedent that the requisite waiver of sovereign immunity for an award of attorney fees against the United States pursuant to RUSCC 37 exists in section 2412(b) and not in the terms of RUSCC 37 itself. *See In re*

*Good Hope Indus., Inc.,* 886 F.2d at 482; *Adamson,* 855 F.2d at 670–72.

As a practical matter, the United States seeks to deny to a private litigant that which Congress freely gave. In creating the Claims Court and enacting the Tucker Act and the Contract Disputes Act, Congress provided a forum in which the public could bring suit against the government and expect the opportunity for a fair fight over the merits of the claims. We cannot accept the government's position that it can consent to suit in the Claims Court under the Tucker Act and the Contract Disputes Act, and yet simultaneously may abuse the litigative process to the impairment of fair adjudication. We reject the notion that the government can frustrate and undermine the goals in creating such a tribunal, leaving the Claims Court itself helpless to preclude such conduct on the government's part, and thereby eliminating the possibility of achieving a "fair" result.[4]

## V

Because the United States has waived its sovereign immunity with respect to an award of attorney fees under RUSCC 37,[5] the judgment of the Court of Federal Claims is

AFFIRMED.

---

4. During oral argument, the government agreed that the Claims Court can police compliance with its discovery orders by entering a default judgment against the offending party. This court has noted the draconian nature of such judgments and the infrequency with which they properly may be entered. *Hendler v. United States,* 952 F.2d 1364, 1382 (Fed.Cir.1991). To encourage a more common use of default judgments against the government when it abuses the discovery process would only warp the playing field

which Congress levelled by enacting section 2412(b).

5. In light of our holding, we need not address the issue of whether the Claims Court has the inherent power to sanction the government for abuse of the litigative process. *See Chambers v. NASCO, Inc.,* — U.S. —, ——, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980).