# United States Court of Appeals for the Federal Circuit

04-1464, -1500

YANCHENG BAOLONG BIOCHEMICAL PRODUCTS COMPANY, LTD.,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant,

and

CRAWFISH PROCESSORS ALLIANCE,
LOUISIANA DEPARTMENT OF AGRICULTURE & FORESTRY,
and BOB ODOM, Commissioner.

Defendants.

J. Kevin Horgan, deKieffer & Horgan, of Washington, DC, argued for plaintiff-cross appellant.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, and Stephen C. Tosini, Trial Attorney. Of counsel on the brief were John D. McInerney, Acting Chief Counsel, Elizabeth C. Seastrum, Senior Counsel, and, Marisa Beth Goldstein, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Appealed from: United States Court of International Trade

Judge Gregory W. Carman

# United States Court of Appeals for the Federal Circuit

04-1464, -1500

YANCHENG BAOLONG BIOCHEMICAL PRODUCTS COMPANY, LTD.,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant,

and

CRAWFISH PROCESSORS ALLIANCE,
LOUISIANA DEPARTMENT OF AGRICULTURE & FORESTRY, and
BOB ODOM, Commissioner,

Defendants.

_____

DECIDED:  May 11, 2005

_____

Before CLEVENGER, GAJARSA, and PROST, <u>Circuit Judges</u>.

CLEVENGER, <u>Circuit Judge</u>.

The United States appeals the decision of the United States Court of International Trade holding it in contempt for violating a preliminary injunction by ordering liquidation of the entries of Yancheng Baolong Biochemical Products Co., Ltd. ("Yancheng").  Yancheng cross-appeals the court's decision to deny attorney fees for the contempt proceedings.  We affirm the decision of the Court of International Trade denying Yancheng an award of attorney fees because even though we find that the

government was correctly held in contempt, the government has not waived its sovereign immunity for this type of award.

I

The United States Department of Commerce ("Commerce") determined that sales under an antidumping duty administrative review reported by Yancheng were actually from another exporter. Consequently, Commerce rescinded review of Yancheng's entries. Freshwater Crawfish Tail Meat from the People's Republic of China; Notice of Final Results of Antidumping Duty Administrative Review and New Shipper Reviews, and Final Partial Rescission of Antidumping Duty Administrative Review, 66 Fed. Reg. 20,634 (Apr. 24, 2001). Yancheng's merchandise that entered the United States during the period of review ("POR") was thus subjected to a China-wide duty rate of 201.63 percent.

Yancheng then commenced suit in the Court of International Trade and moved for a preliminary injunction to stop Commerce from liquidating its entries. The injunction was fashioned to prevent the government, "during the pendency of this action, including during any remands, from causing or permitting liquidation" of entries of freshwater crawfish tail meat from China exported by Yancheng and entered into the United States during the POR. Yancheng Baolong Biochem. Prods. Co. v. United States, No. 01-00338, slip op. at 1 (Ct. Int'l Trade Aug. 2, 2001) ("Injunction Order"). The injunction indicated that the entries would be "liquidated in accordance with the final court decision as provided in 19 U.S.C. § 1516a(e)." Id. at 2.

The Court of International Trade sustained Commerce's rescission of the review on August 15, 2002. Yancheng Baolong Biochem. Prods. Co. v. United States,

219 F. Supp. 2d 1317 (Ct. Int'l Trade 2002) ("Yancheng I"). Yancheng appealed that decision to the Federal Circuit on October 4, 2002, and did not seek another injunction pending the appeal.

Commerce ordered Customs to liquidate Yancheng's entries at the rate of 201.63 percent on November 1, 2002. On November 5, 2002, Yancheng filed a motion to clarify the duration of the preliminary injunction. The government failed to respond to this motion to clarify. On November 8, 2002, Customs field offices received the instructions to liquidate. On January 3 and January 10, 2003, Customs liquidated some entries subject to the injunction. The trial court informed the parties on January 15, 2003, that the original injunction remained effective through the appeal. On January 17, 2003, Customs liquidated the last of the 28 entries on the West Coast. Only three of Yancheng's entries, those on the East Coast, remained unliquidated. See Yancheng Baolong Biochem. Prods. Co. v. United States, 277 F. Supp. 2d 1349, 1351-52 (Ct. Int'l Trade 2003) ("Yancheng II"). On the same day that the last liquidations occurred on the West Coast, Customs received new instructions to discontinue the liquidation of Yancheng's entries. The Court of International Trade then held the government in contempt of the preliminary injunction on July 16, 2003, based on the liquidations that occurred in January 2003 that implemented Commerce's November 2002 instructions. The court found that the government violated the preliminary injunction because the injunction was in effect until all appeals were completed in the case. See Yancheng II, 277 F. Supp. 2d at 1363.

The Federal Circuit sustained the application of the China-wide rate to Yancheng on August 4, 2003. Yancheng Baolong Biochem. Prods. Co. v. United States, 337 F.3d

1332 (Fed. Cir. 2003) ("Yancheng III"). In response, the government filed a motion to vacate the civil contempt order. The Court of International Trade requested additional briefing on whether the government had waived sovereign immunity to the award of contempt damages. The government's motion to vacate the contempt order was denied on April 28, 2004, and the court held that Yancheng could not recover attorney fees as damages for the government's contempt because the government had not waived its sovereign immunity for such an award. Yancheng Baolong Biochem. Prods. Co. v. United States, No. 01-00338 (Ct. Int'l Trade Apr. 28, 2004) ("Yancheng IV"). Relying on Lane v. Pena, 518 U.S. 187 (1996), the court found that there was no unequivocal expression of waiver in any statutory text. Yancheng IV, slip op. at 25. The government now appeals the decision of the Court of International Trade which held the government in contempt of the preliminary injunction, and Yancheng cross-appeals the finding that sovereign immunity precludes its recovery of attorney fees for the contempt proceedings. We have jurisdiction over this appeal from a final decision of the Court of International Trade pursuant to 28 U.S.C. § 1295(a)(5) (2000).

II

This court reviews contempt decisions for abuse of discretion. Ammex, Inc. v. United States, 334 F.3d 1052, 1055 (Fed. Cir. 2002). Abuse of discretion will be found when there is an error of law, a clear error of judgment, or findings that were clearly erroneous. Id. Questions of law are reviewed de novo. Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994).

III

The government contends that Yancheng was required to ask for a second injunction for the period pending appeal and that it should not have been held in contempt because the preliminary injunction was not a clear order. Yancheng argues that the preliminary injunction in this case issued such that entries would be "liquidated in accordance with the final court decision as provided in 19 U.S.C. § 1516a(e)," see Injunction Order, slip op. at 2, which under Federal Circuit precedent clearly included the time period pending the appeal. The government admits that the "[s]uspension of liquidation of subject entries is a routine procedure in this type of case because liquidation can render the litigation moot." The government also acknowledges that this case would have been mooted if Customs would have liquidated the three East Coast entries at the same time it liquidated the West Coast entries. As this court held in Zenith Radio Corp. v. United States, if there is no injunction, liquidation is automatic under 19 U.S.C. § 1516a(e) and § 1516a(c)(1), and any decision on the merits of a liquidation challenge after liquidation has taken place is without effect. 710 F.2d 806, 810 (Fed. Cir. 1983).

To establish civil contempt, it must be shown, by clear and convincing evidence, that there was a valid order in place, the defendant had knowledge of the order, and the order was disobeyed. Ammex, Inc. v. United States, 193 F. Supp. 2d 1325, 1327-28 (Ct. Int'l Trade 2002). The government argues that it cannot be held in contempt because there is a "fair ground of doubt as to the wrongfulness of the [government's] actions." Preemption Devices, Inc. v. Minn. Mining & Mfg. Co., 803 F.2d 1170, 1173 (Fed. Cir. 1986). The government asserts that the injunction was dissolved upon the

issuance of the Court of International Trade decision, or that at least there was a fair ground of doubt as to whether the injunction continued into the appeal stage of the litigation.

The statutory scheme under which the preliminary injunction issued in this case is critical to determining when the injunction was intended to dissolve. The preliminary injunction references the liquidation procedure set forth in 19 U.S.C. § 1516a(e). The statutory text of section 1516a(e) is as follows:

(e) Liquidation in accordance with final decision

If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit—
    (1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, and
    (2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section,
shall be liquidated in accordance with the final court decision in the action. Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

19 U.S.C. § 1516a(e) (2000).

This court has previously determined what constitutes "the final court decision in the action" for the purposes of this statute in Timken Co. v. United States, 893 F.2d 337 (Fed. Cir. 1990). In Timken, the Federal Circuit, while acknowledging that the term "'final decision' can mean different things in different situations," found that 19 U.S.C. § 1516a(e)(2) required that a "final decision" is a decision that is "conclusive," where all appeals or possibility of appeals are foreclosed. 893 F.2d at 339. The court held that "an appealed CIT decision is not a 'final court decision' within the plain meaning of

§ 1516a(e)." Id. This court further noted that "§ 1516a(e) does not require liquidation in accordance with an appealed CIT decision, since that section requires that liquidation take place in accordance with the final court decision in the action." Id. at 340.

The Federal Circuit has also addressed this issue in Hosiden Corp. v. Advanced Display Manufacturers of America, 85 F.3d 589 (Fed. Cir. 1996). As in Timken, the court found that "[i]n accordance with 19 U.S.C. § 1516a(e), entries of merchandise for which liquidation has been suspended by court order remain subject to suspension of liquidation until there is a 'final court decision in the action.'" Id. at 590. The court reiterated that "[a] decision of the Court of International Trade that has been appealed 'is not a "final court decision" within the plain meaning of § 1516a(e)'" and that "[s]tatute and precedent are clear that the decision of the Court of International Trade is not a 'final court decision' when appeal has been taken to the Federal Circuit." Id. at 591.

Most recently this court has reviewed "final decision" in the context of section 1516a(e) in Fujitsu General America, Inc. v. United States, 283 F.3d 1364 (Fed. Cir. 2002). In Fujitsu, liquidation was enjoined pursuant to 19 U.S.C. § 1516a(c)(2). Continuing the logic of Timken and Hosiden, the Federal Circuit found that the injunction would end, according to section 1516a(e), when the decision was "final" or conclusive such that it could no longer be appealed. Id. at 1379. The decision became "final" and the injunction dissolved on the date when "the time for petitioning the Supreme Court for certiorari expires without the filing of a petition." Id.

This line of precedent forecloses any argument by the government that the preliminary injunction was ambiguous or was not intended to persist through the appeal process. There is therefore no fair ground of doubt that the government violated a valid

injunction by prematurely liquidating Yancheng's entries. Thus the Court of International Trade did not abuse its discretion by holding the government in contempt of the preliminary injunction. However, Yancheng cannot recover damages from the government because the government has not waived its sovereign immunity under the theories as presented.

Yancheng presented two theories on the waiver of sovereign immunity in this case. Yancheng argued that the grant of jurisdiction in 28 U.S.C. § 1581(c) to the Court of International Trade that opened the door to dumping cases in which the United States is a party effectuated a broad waiver of sovereign immunity. Yancheng alternatively argued that Rule 86.2 of the Court of International Trade, which governs civil contempt proceedings in that court and allows for the award of damages to the party harmed by the contumacious conduct, effects a waiver of sovereign immunity under the Equal Access to Justice Act, Pub. L. No. 96-481, Title II, 1980 U.S.C.C.A.N. (94 Stat.) 2325 (1980) ("EAJA") (codified as amended at various sections of 5 & 28 U.S.C.). Neither of the theories that Yancheng presents establishes an unequivocal waiver.

Waivers of sovereign immunity must be "unequivocally expressed." United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990)). The Supreme Court has found that "firmly grounded in [their] precedents" is the fact that "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text" and "will not be implied." Lane, 518 U.S. at 192. Yancheng has not pointed to any language in 28 U.S.C. § 1581(c) that unequivocally expresses a waiver of sovereign immunity for liability to sanctions for contempt of court, and according to Supreme Court precedent, we cannot

04-1464, -1500                8

imply one. Although monetary damage awards in contempt proceedings may be an effective tool for the Court of International Trade to control litigant behavior, monetary damages are not the exclusive means to vindicate the authority of the court. The government's submission to the jurisdiction of the court alone is not sufficient to supply a waiver of sovereign immunity for the sanctions the court sought to impose.

Similarly, Yancheng cannot point to a statutory basis for a waiver of sovereign immunity with regard to Rule 86.2 of the Court of International Trade. Yancheng attempts to rely on M.A. Mortenson Co. v. United States, 996 F.2d 1177 (Fed. Cir. 1993), to establish a waiver of sovereign immunity. Mortenson, however, is distinguishable from the present case. In Mortenson, the rule at issue was Rule 37 of the United States Claims Court ("RUSCC 37") which was drawn in its entirety from Federal Rule of Civil Procedure 37. 996 F.2d at 1183. The Federal Rules are promulgated under the authority of the Supreme Court and are submitted to Congress for review and approval which, according to the Supreme Court, deems the Federal Rules as having the "force [and effect] of a federal statute." Sibbach v. Wilson & Co., 312 U.S. 1, 13 (1941); see also Mortenson, 996 F.2d at 1181. In the present case, attorney fees were requested based on Rule 86.2 of the Rules of the United States Court of International Trade which provides that "[a] reasonable counsel fee, necessitated by the contempt proceeding, may be included as an item of damage." Unlike RUSCC 37, Rule 86.2 of the Court of International Trade has no corollary rule in the Federal Rules, and the Rules of the Court of International Trade are not promulgated subject to congressional approval. The court is given blanket authority by statute to promulgate its own rules, but without any specific power to subject the United

States to monetary liability.  <u>See</u> 28 U.S.C. § 2633(b) (2000).  Thus, the logic of <u>Mortenson</u> simply does not extend to the rule at issue in this case.

Yancheng did not file an EAJA petition.  We therefore need not reach the question of whether Yancheng is a prevailing party in the contempt proceedings because attorney fees are not sought under an EAJA petition.  Because neither of Yancheng's proffered theories support finding an unequivocal waiver expressed in statutory text, attorney fees awarded as damages incurred because of the contempt proceedings against Commerce cannot be granted in this case.

IV

The Court of International Trade correctly held the United States in contempt of the preliminary injunction restraining the liquidation of Yancheng's entries at the China-wide rate.  However, we conclude that the government has not waived its sovereign immunity to the award of attorney fees under Rule 86.2 of the Court of International Trade; thus we affirm the denial of such an award.

<u>AFFIRMED</u>

04-1464, -1500            10