McArthur JONES

and

Martin M. Karnas, Appellants,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

Nos. 90–58, 90–312.

United States Court of Veterans Appeals.

Argued Oct. 20, 1993.

Decided Dec. 28, 1993.

As Amended Jan. 25, 1994.

William G. Smith, Los Angeles, CA, for appellant McArthur Jones.

Ruth Eisenberg, with whom Barton F. Stichman and Gershon M. Ratner, Washington, DC, were on the pleadings, for appellant Martin Karnas.

David W. Engel, Sp. Asst. to the Asst. Gen. Counsel, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Paul J. Hutter, Washington, DC, were on the pleadings, for appellee.

Ruth Eisenberg, Washington, DC, filed a reply memorandum for the National Veterans Legal Services Project as amicus curiae.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, MANKIN, HOLDAWAY, IVERS and STEINBERG, Judges.

NEBEKER, Chief Judge, filed the opinion of the Court.

KRAMER, Judge, filed a concurring opinion.

STEINBERG, Judge, filed a dissenting opinion.

NEBEKER, Chief Judge:

These consolidated motions, seeking attorney fees and expenses, require the resolution of whether a recent amendment to the Equal Access to Justice Act (EAJA), 28 U.S.C.A. § 2412 (West Supp.1993), applies to legal services performed in cases decided on their merits before the date of the amendment. In resolving this issue, we are quite mindful of the competing policy pressures favoring availability of counsel to veterans seeking to appeal denial of benefits and the rather strict command to require clear waivers of sovereign immunity by statute. There is, after all, much to be said for favoring compensation of counsel in these cases, and we do not lightly reach our conclusion. However, we hold that those legal services are not compensable because the clause concerning cases "pending" at the time of the amendment does not reach the services performed in these cases.

## I. Factual and Procedural Background

The merits of each of the underlying appeals were decided prior to the enactment of

the Federal Courts Administration Act of 1992 (FCAA), Pub.L. No. 102–572, 106 Stat. 4506 (1992). *Jones v. Derwinski*, 1 Vet.App. 210 (1991), was decided on April 10, 1991. *Karnas v. Derwinski*, 1 Vet.App. 308 (1991), was decided on June 11, 1991. Following the decision on the merits of his appeal, appellant Jones submitted a bill of costs and sought recovery pursuant to 28 U.S.C.A. § 2412(a) and (b). Appellant Karnas filed a motion for attorney fees under 28 U.S.C.A. § 2412(d). Subsequently, appellant Jones filed a motion for attorney fees. The matters were consolidated. *See Jones and Karnas v. Derwinski*, 2 Vet.App. 7 (1991) (en banc order).

The Court, en banc, then held, pursuant to *Ardestani v. INS*, —— U.S. ——, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991), that the EAJA did not apply to proceedings in this Court because sovereign immunity had not been waived. *Jones v. Derwinski*, 2 Vet.App. 231 (1992) [hereinafter *Jones/Karnas*]. Appellant Karnas appealed to the United States Court of Appeals for the Federal Circuit (Federal Circuit). Appellant Jones did not. During the pendency of the Karnas appeal, the FCAA was enacted. That Act contained an express waiver of sovereign immunity and made the EAJA applicable to any future appeal brought before this Court as well as to cases pending in the Federal Circuit or in this Court on the date of enactment of the FCAA, October 29, 1992. Pub.L. No. 102–572, § 506, 106 Stat. 4506, 4513 (1992). Prompted by the new legislation, the parties filed a joint motion with the Federal Circuit to vacate and remand as moot. The Federal Circuit granted the motion, vacated this Court's decision as to appellant Karnas, and remanded for further proceedings consistent with the FCAA. *See Karnas v. Principi*, 985 F.2d 582 (1992).

## II. Analysis

■ Appellant Karnas argues that the Federal Circuit, in granting the joint motion, has decided that these cases were "pending" by virtue of its remand to this Court since the Federal Circuit would have granted the joint motion to vacate and remand only if the cases were indeed pending. Otherwise, appellant Karnas argues, the issue on appeal before the Federal Circuit, i.e., whether these cases fell under the EAJA before the FCAA amendments were enacted, would still have needed to be decided by the Federal Circuit.

Appellant Karnas's argument is misguided for two reasons. We think it clear that the Federal Circuit, far from the holding ascribed to it, was merely reacting to the parties' then assumption that the case was pending under the FCAA. The issue was not expressly posed in the joint motion and, understandably, the Federal Circuit remanded for further proceedings under that Act without an express holding on the "pending" question. The second problem with appellant Karnas's argument is that, even without a joint motion, a remand would still have been the ordinary course for the Federal Circuit to take in order that this Court might first interpret the EAJA as amended by the FCAA. *See* 38 U.S.C.A. § 7292(a) (West 1991). Because the Federal Circuit has not determined whether these cases were in fact "pending" within the meaning of FCAA's section 506, we turn to our analysis of the law.

At the time of our 1992 decision in these cases, the Supreme Court, in *Ardestani*, had recently reemphasized that in order for the EAJA to apply, there must be an unambiguous waiver of sovereign immunity. "The EAJA renders the United States liable for attorneys' fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States." *Ardestani*, —— U.S. at ——, 112 S.Ct. at 520. The Supreme Court also explained that the EAJA's reach could not be extended "when the plain language of the statute, coupled with the strict construction of waivers of sovereign immunity, constrain us to do otherwise." *Id.* —— U.S. at ——, 112 S.Ct. at 521. In the absence of such an express waiver of sovereign immunity, we held that the EAJA did not apply to proceedings in this Court.

The Supreme Court's most recent cases addressing the principles of construction applicable to waivers of the Government's sovereign immunity are *United States Dep't of*

*Energy v. Ohio,* —— U.S. ——, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992), and *United States v. Nordic Village, Inc.,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). In *Department of Energy,* the Court used a strict construction analysis and held that the language of the statutes did not provide a "clear and unequivocal" waiver of sovereign immunity from liability for civil fines imposed for past violations. *Dep't of Energy,* —— U.S. at ——, 112 S.Ct. at 1635.

Keeping in mind the Supreme Court's admonition that waivers of sovereign immunity must be express and, where such a waiver is expressed, it must be narrowly construed, we begin our analysis of the EAJA as amended by the FCAA section 506, which states in pertinent part:

> [This amendment] shall apply to any case pending before the United States Court of Veterans Appeals on the date of the enactment of this Act, to any appeal filed in that court on or after such date, and to any appeal from that court that is pending on such date in the United States Court of Appeals for the Federal Circuit.

Curiously, the Supreme Court was not included in the "case pending" sentence, though review there is also possible. *See* 38 U.S.C.A. § 7291 (West 1991).

We note that this is not the first time that the question of which "pending" cases fall under the EAJA has been raised. The federal courts have had to decide this question twice before: both at the time of the original enactment of the EAJA in 1980 and after its subsequent reenactment with amendments in 1985. Disputes as to the applicability of both the original 1980 enactment and the 1985 amendments gave rise to litigation which, in turn, resulted in two distinct lines of decisions in the federal courts of appeals on the issue of whether a case was "pending" on the effective date of enactment or amendment.

### A. "Pending" Cases at the Time of the 1980 Enactment of the EAJA

When the EAJA was enacted in 1980, section 208 of the Act provided that it applied to "any civil action or adversary adjudication described in section 2412 of title 28, United States Code, which is *pending* on, or commenced on or after [October 1, 1981]."

Pub.L. No. 96–481, § 208, 94 Stat. 2330 (1980) (emphasis added). In early decisions, two courts of appeals held that the word "pending" included cases where the merits had been decided and only applications for attorney fees remained. In *United States for Heydt v. Citizens State Bank,* 668 F.2d 444, 446 (8th Cir.1982) (*Heydt* ), the United States Court of Appeals for the Eighth Circuit, concluded that since no manifest injustice would occur should it consider appellant's request for attorney fees, it would entertain his request. In reaching its decision, the *Heydt* court specifically relied on *Bradley v. School Bd.,* 416 U.S. 696, 711–16, 94 S.Ct. 2006, 2016–18, 40 L.Ed.2d 476 (1974), in which the Supreme Court had held that, unless manifest injustice would result or some indication existed to the contrary in the statute or legislative history, an appellate court must apply the law in effect at the time it renders its decision. *See also Knights of the KKK v. East Baton Rouge,* 679 F.2d 64, 68 (5th Cir.1982) (*KKK* ) ("fact that a motion for attorneys' fees is the only matter pending before a court does not mean that court lacks jurisdiction or that the case is not 'pending' ").

In subsequent decisions, however, other courts of appeals felt themselves constrained by the strict construction which must be accorded to waivers of sovereign immunity and held that "pending" for EAJA purposes includes only cases pending on the merits. In *Nichols v. Pierce,* 740 F.2d 1249, 1256 (D.C.Cir.1984) (citations omitted), the United States Court of Appeals for the District of Columbia (D.C.Circuit) commented:

> Examining the language of [EAJA], it is apparent that a fair reading of its terms does not demonstrate a congressional intent to establish liability. The Act itself offers no definition of the term "pending."
> . . .
>  . . . .
> We do not believe the word "pending" should be interpreted as broadly as the appellant suggests. It may be that the result she urges is not explicitly ruled out by the Act. But this is not enough. As a waiver of sovereign immunity, the Act's

terms must affirmatively *establish* liability, not merely fail to preclude it.

The D.C. Circuit further reasoned that including claims pending on attorney fees alone would not further Congress' purpose in enacting the EAJA. Since the EAJA was enacted in order to encourage those who might otherwise be deterred financially from bringing suit when faced with unreasonable governmental action, *see* EAJA, Pub.L. No. 96–481, § 202(a), 94 Stat. 2325 (1980), "no possible deterrent could be removed by an award of attorneys' fees [here, given that] the appellant's case was filed, briefed, argued, and decided by a final judgment on the merits before the Act ever took effect." *Nichols,* 740 F.2d at 1257. *See also Commissioners of Highways of Towns of Annawan v. United States (Highways* ), 684 F.2d 443, 444 (7th Cir.1982) (since waivers of sovereign immunity must be strictly construed and are not to be extended by implication, cases pending only on applications for attorney fees are not covered by EAJA); *Stanwood v. Green,* 744 F.2d 714, 716 (9th Cir.1984) (per curiam) (case not "pending" for purposes of civil rights attorney fees under section 1988 when "no unresolved substantive claim" remained).

The United States Court of Appeals for the Ninth Circuit reached a similar conclusion in *Tongol v. Donovan,* 762 F.2d 727 (9th Cir.1985). Acknowledging the holdings of the Fifth and Eighth Circuits in *KKK* and *Heydt,* the Ninth Circuit nevertheless wrote,

We believe the District of Columbia [*Nichols* decision] and Seventh Circuits [*Highways* decision] more closely reflect the approach mandated by [the] latest teachings of the Supreme Court. The Eighth Circuit's opinion [*Heydt* ] is devoid of any statutory analysis, and the Fifth Circuit's conclusion [*KKK* ] is hampered by a failure to heed principles of narrow construction.

*Tongol,* 762 F.2d at 732 (citations omitted).

## B. Cases "Pending" at the Time of the 1985 Amendments to the EAJA

In 1985, Congress amended and extended the EAJA. Pub.L. No. 99–80, 99 Stat. 183 (1985). The 1985 amendments were made applicable "to cases pending on or commenced on or after [August 5, 1985]."

Pub.L. No. 99–80, § 7, 99 Stat. 183, 186 (1985). The question of what cases were actually "pending" arose again. In *Russell v. National Mediation Bd.,* 775 F.2d 1284 (5th Cir.1985), the Fifth Circuit again held that cases which involve only EAJA applications are nevertheless "pending" cases. However, the Fifth Circuit took great care to distinguish its 1982 decision in *KKK* and, in so doing, appeared to question its rationale while acknowledging the decisions by the other courts of appeals which had rejected it because of the doctrine of sovereign immunity:

Other courts have criticized our decision in *KKK* for failing to apply the principle that waivers of sovereign immunity are to be narrowly construed. [These cases] find *Bradley* inapposite to an EAJA case because the United States was not a party in *Bradley* and no waiver of sovereign immunity was involved. Whatever the merits of the criticism directed at *KKK,* it has little weight here.... [The] clarifying amendments in Pub.L. No. 99–80 do not waive sovereign immunity in the same sense that the original EAJA did; the original Act created a new liability where none previously had existed, while the portion of the new Act with which we are concerned—the definition of "position of the United States"—merely clarif[ies] the EAJA.

*Id.* at 1287–88 (citations omitted).

In *Center for Science in the Public Interest v. Regan,* 802 F.2d 518 (D.C.Cir.1986), the D.C.Circuit held that, for purposes of the 1985 amendments, the plain meaning of "pending" includes pending applications for attorney fees. The Court distinguished its *Nichols* decision by saying,

the concerns which prompted the courts to decline to apply retroactively the original EAJA to cases which were closed save for the fee petition are inapplicable in the context of the application of the new definition of "position" under the new Amendments. By virtue of the original EAJA, the Government has already expressly waived sovereign immunity from attorneys' fees in this case.

*Center for Science,* 802 F.2d at 524 n. 11.

One court of appeals has even held that, despite the "clarifying" nature of the 1985

amendment defining "position of the United States", the strict construction applied to waivers of sovereign immunity still dictates against including proceedings where only EAJA applications are pending. *See Blackmon v. United States,* 807 F.2d 70 (6th Cir. 1986) (application of the 1985 amendments to pending fee petitions as to that definition would result in substantial drain on the treasury).

Not surprisingly, appellants urge us to apply *Heydt, KKK,* and the line of cases which grew out of the 1985 EAJA amendments. We must decline this invitation, however, because those cases are simply inapposite. As this Court has made clear in its previous decision in these consolidated matters, we are presented with situations which are analogous *not* to the 1985 clarifying amendments to the EAJA but to the 1980 EAJA waiver of sovereign immunity. *Jones/Karnas,* 2 Vet. App. at 231. The FCAA was not merely a clarifying amendment; rather, it was Congress' response to our original 1992 holding in *Jones/Karnas* that the EAJA did not apply to proceedings in this Court because there had been no express statutory waiver of sovereign immunity.

Any ambiguity which might have resulted from the decisions of the courts of appeals following the 1980 enactment and the 1985 amendment of the EAJA was clarified once and for all by the Supreme Court in *Ardestani* and *Nordic Village:* "The EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and that amounts to a partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States." *Ardestani,* —— U.S. at ——, 112 S.Ct. at 521; *see Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1014. Pursuant to this command, we accord the EAJA waiver of sovereign immunity embodied in the 1992 FCAA the same strict construction which was accorded to the 1980 EAJA waiver of sovereign immunity by the D.C.Circuit in *Nichols,* the Seventh Circuit in *Highways,* and the Ninth Circuit in *Tongol.*

Finally, we note that appellant Karnas argues that language in a 1986 Federal Circuit decision demonstrates that the Federal Circuit viewed the 1985 amendments to the EAJA as applying to cases then pending merely on application for attorney fees, and that we are bound by this "holding." *Gavette v. Office of Personnel Management,* 808 F.2d 1456 (Fed.Cir.1986) (en banc). The Federal Circuit stated in *Gavette* that "[t]he [1985] amendments ... provide for their applicability to *pending* cases without distinction, and the amendments apply to Gavette's petition for fees." *Id.* at 1467 (emphasis in original). This language does not, as appellant Karnas contends, constitute a holding, as that part of the opinion dealt with the meaning of "position of the United States". *Id.* Moreover, the Federal Circuit in *Gavette* dealt with the 1985 reenactment of the EAJA without an expiration date, including the provisions to fill the time void between the expiration of the 1980 act and the 1985 reenactment, not the original enactment. The reference to the legislative history of the 1985 amendments in a footnote stating that those amendments were "clarifying" also has no bearing on our interpretation of the FCAA. *Id.* at 1467 n. 62. As we observed above, the FCAA so-called "clarification" served an entirely different purpose—to resolve the issue of EAJA's applicability to this later-created Court. Furthermore, *Gavette* was decided before the Supreme Court's holding in *Ardestani* that EAJA waivers of sovereign immunity must be construed strictly. *Ardestani,* —— U.S. at ——, 112 S.Ct. at 521; *Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1016.

## C. Legislative History

We are asked to view the legislative history of the FCAA, which states that the "intent of section [506] is to clarify the inclusion of the Court of Veterans Appeals as a 'court' for purposes of EAJA," as reflective of an expressed desire to clarify the existence of a past waiver of sovereign immunity rather than a waiver concurrent with the amendment. *See* S.Rep. No. 342, 102d Cong., 2d Sess. 39 (1992). But in *Nordic Village,* the Supreme Court held that, although the statute had waived sovereign immunity, it had failed to unambiguously establish and unequivocally express that the waiver extended to monetary recovery in bankruptcy actions since it could be interpreted as not authoriz-

ing such relief. *Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1015. In its discussion of the rule that waivers of sovereign immunity must be express, the Supreme Court stated that legislative history has no role in the interpretation of the statutory waiver:

> The foregoing [interpretations of the Bankruptcy Code] are assuredly not the only readings of [the statute], but they are plausible ones—which is enough to establish that a reading imposing monetary liability on the Government is not "unambiguous" and therefore should not be adopted. Contrary to respondent's suggestion, legislative history has no bearing on the ambiguity point. . . . [T]he "unequivocal expression" of elimination of sovereign immunity that we insist upon is an expression in statutory text. If clarity does not exist there, it cannot be supplied by a committee report.

*Id.* —— U.S. at ——, 112 S.Ct. at 1016 (citations omitted). While the Supreme Court in *Nordic Village* relied on its earlier decision in *Ardestani* for the principle of strict construction, *Nordic Village* represents a termination of the narrow use of legislative history in construing waivers of sovereign immunity permitted by *Ardestani. See Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1016; *Ardestani,* —— U.S. at ——, 112 S.Ct. at 520 (the "'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances,' when a contrary legislative intent is clearly expressed" (citations omitted)).

Since the language of the EAJA as amended by the FCAA makes no distinction between pending on the merits and pending on applications for fees, it does not meet the "clear and unequivocal" requirement of *Department of Energy* or the "unequivocal expression" requirement of *Nordic Village.* The terms are susceptible to either interpretation, and since it is equally reasonable to construe the terms as referring only to cases pending on the merits, a reading which extends the Government's waiver to cases pending on fee applications is not "'unambiguous' and therefore should not be adopted." *Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1016; *see Dep't of Energy,* —— U.S. at ——, 112 S.Ct. at 1627.

Guided by the Supreme Court in *Nordic Village,* once we conclude that the statutory language does not unambiguously waive immunity over cases pending on fee applications, that conclusion ends our analysis since the requisite "unequivocal expression" of the waiver cannot be "supplied by a committee report." *Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1016. Furthermore, even if we were to consider the language of the Senate report, we think it more plausible that the expression in the Senate report respecting clarification recognized that the question as decided by this Court in 1992 was still open and pending in the Federal Circuit. Thus, the Act, if the Senate report is at all relevant on this question of clarification, resolved or clarified the discrete issue that was *sub judice,* not the existence of a past waiver.

Finally, we note that *Ardestani* distinguished its holding that the immigration proceedings in question were "wholly outside the scope of the EAJA" from cases in which it had recognized that "once Congress has waived sovereign immunity over certain subject matter, the Court should be careful not to 'assume the authority to narrow the waiver that Congress intended.'" —— U.S. at ——, 112 S.Ct. at 520 (citations omitted). Here, because the threshold requirement of a statutory waiver of sovereign immunity with respect to cases pending merely on application for attorney fees has not been met, we are not interpreting a statutory waiver of sovereign immunity too narrowly by holding that the cases before us do not fall under the EAJA.

### III. Conclusion

We hold, therefore, that for purposes of FCAA section 506 and the EAJA, the term "case pending" includes only cases pending before the Court on the merits on or after October 29, 1992; it does not include cases in which the only matters pending before the Court are EAJA applications.

Since the Court lacks power to entertain them, the motions for attorney fees and expenses are DISMISSED.

KRAMER, Judge, concurring:

I concur in the result reached by the majority, but write separately to address recent Supreme Court and Court of Appeals for the Federal Circuit cases and the legislative history of the Federal Courts Administration Act of 1992 (FCAA), Pub.L. No. 102–572, § 506, 106 Stat. 4506, 4513 (codified at 28 U.S.C.A. § 2412 note (West Supp.1993) (Application of 1992 Amendment to Pending Cases)).

The most recent Supreme Court case addressing waivers of sovereign immunity was decided in May 1993. In *United States v. Idaho, ex rel. Director, Idaho Dep't of Water Resources*, —— U.S. ——, 113 S.Ct. 1893, 123 L.Ed.2d 563 (1993), the Court reaffirmed the principles of construction applicable to waivers of sovereign immunity followed in April 1992 in *United States Dep't of Energy v. Ohio*, —— U.S. ——, ——, 112 S.Ct. 1627, 1635, 118 L.Ed.2d 255 (1992) (statutory language did not provide a "clear and unequivocal" waiver), and in February 1992 in *United States v. Nordic Village, Inc.*, —— U.S. ——, ——, 112 S.Ct. 1011, 1016, 117 L.Ed.2d 181 (1992) (" 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text"), by stating that "[t]here is no doubt that waivers of federal sovereign immunity must be 'unequivocally expressed' *in the statutory text.*" *Idaho, ex rel.*, —— U.S. at ——, 113 S.Ct. at 1896 (emphasis added) (citation omitted).

In *Smith v. United States*, —— U.S. ——, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993), a case decided in March 1993, just two months before *Idaho, ex rel.*, the Supreme Court held that the waiver of sovereign immunity in the Federal Tort Claims Act (FTCA) did not encompass tort claims arising in Antarctica. However, in construing Antarctica as a "foreign country" within the meaning of the foreign-country exception to FTCA applicability, the Court, unlike in *Idaho, ex rel.*, not only relied upon the language and the structure of the statute, but also utilized FTCA legislative history to bolster its interpretation of the statute. *Smith*, —— U.S. at —— n. 4, 113 S.Ct. at 1182 n. 4. In so doing, the Supreme Court cited *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), where the Court had also analyzed both the language and the legislative history of the statute to determine congressional intent. *Kubrick*, 444 U.S. at 118–120, 100 S.Ct. at 357–358. By referring to legislative history, and by citing to *Kubrick*, the Supreme Court in *Smith* seemed to indicate that legislative history has a role in interpreting statutory waivers of sovereign immunity, contrary to the seemingly decisive language in *Nordic Village*, —— U.S. at ——, 112 S.Ct. at 1016, that, "[i]f clarity does not exist ... [in statutory text], it cannot be supplied by a committee report."

Finally, in *Ardestani v. INS*, —— U.S. ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991), relied upon by the majority here and by the Court in *Nordic Village*, the Supreme Court extensively examined the Equal Access to Justice Act (EAJA) legislative history after stating that the " 'strong presumption that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances,' when a contrary legislative intent is clearly expressed" (citations omitted).

Further confusion arises from a decision issued in June 1993 by the Court of Appeals for the Federal Circuit subsequent to both *Idaho, ex rel.* and *Smith*. In *M.A. Mortenson Co. v. United States*, 996 F.2d 1177 (Fed. Cir.1993), a case which also dealt with the applicability of EAJA, the Federal Circuit held that EAJA waived sovereign immunity with respect to an award of fees for abuse of discovery assessed against the Government pursuant to Rule 37 of the Rules of the Federal Court of Claims, a rule patterned after Rule 37 of the Federal Rules of Civil Procedure. The Court stated:

> The present case is representative of a situation in which congressional intent is clear, even though imprecisely couched in the statutory phraseology of section 2412(b). The legislative history of the EAJA and the circumstances surrounding the passage thereof demonstrate that the drafters explicitly contemplated recovery of attorney fees against the government under circumstances other than those narrowly revealed by the "terms of any statute" language [of 28 U.S.C. § 2412(b) ].

*Id.* at 1181. While decisions of the Federal Circuit are binding on this Court, *see* 38 U.S.C.A. § 7292 (West 1991), it should be noted that in *M.A. Mortenson* the Federal Circuit did not reference any of the Supreme Court cases discussed above.

Given the ambiguity now created by *Smith, Ardestani,* and *M.A. Mortenson* on the one hand, which seem to permit the use of legislative history, and *Idaho, ex rel., Department of Energy,* and *Nordic Village* on the other hand, which seem to preclude its use, and resolving this ambiguity by concluding that recourse to legislative history has not been unequivocally foreclosed by binding precedent opinions, an examination of the legislative history of the FCAA itself reveals considerable ambiguity.

The Senate Judiciary Committee report and the House Judiciary Committee report use the words "clarify" and "clarifies," respectively, in describing, respectively, the FCAA's "inclusion" of the Court in the EAJA and the "appli[cability]" of the EAJA to the Court. *See* S.REP. No. 342, 102d Cong., 2d Sess. 39 (1992) ("The intent of section 508 [enacted as § 506] is to clarify the inclusion of the Court of Veterans Appeals as a 'court' for purposes of EAJA"); H.R.REP. No. 1006, 102d Cong., 2d Sess. 25 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3921, 3934 ("Vets are among the types of individuals the statute was intended to help. Therefore, § 508 amends EAJA and clarifies that it applies to the Court of Veterans Appeals"). In this regard, the majority states:

> We are asked to view the legislative history of the FCAA, ... as reflective of an expressed desire to clarify the existence of a past waiver of sovereign immunity rather than a waiver concurrent with the amendment.
>
> . . . .
>
> ... [W]e think it more plausible that the expression in the Senate report respecting clarification recognized that the question as decided by this Court in 1992 was still open and pending in the Federal Circuit. Thus, the Act, if the Senate report is at all relevant on this question of clarification, resolved or clarified that discrete issue

that was *sub judice,* not the existence of a past waiver.

*Ante* at 106–07 (citations omitted). The preceding majority statement correctly indicates that the legislative history's attempt at clarification has resulted in further ambiguity.

The Senate report further states: "The Committee intends to make clear that EAJA applies to the court to the full extent of the law, including the principles contained in ... *Center for Science in the Public Interest v. Regan* [, 802 F.2d 518 (D.C.Cir.1989) ]" (*CSPI* ). S.REP. No. 342, 102d Cong., 2d Sess. 39 (1992). As the majority notes, *ante* at 105, *CSPI* held that, for purposes of applying the 1985 EAJA amendments, "cases pending" included pending applications for attorney fees. Appellants therefore have concluded that the Senate report's citation to *CSPI* indicates congressional intent that the terms "case pending" and "appeal ... pending" in the FCAA include pending fee applications. Appellant Jones even asks in his memorandum to the Court that if this is not the proper conclusion, "... what was the Committee referring to in specifically citing this case?" Mem. of Sept. 7, 1993, at 7.

The response to appellant Jones' inquiry is two-fold. First, the report language is not an expression from the Congress, but only from the Senate. Second, it is not clear what the Committee was referring to when it cited *CSPI*. A significant distinction exists between *CSPI* and the cases presently before the Court in that, while *CSPI* arose in the context of applying a clarifying definition of a term ("position of the United States") used in the original EAJA that had been added by the 1985 EAJA amendments, our cases arise in the context of an original waiver of sovereign immunity. Had the Senate Committee meant to waive sovereign immunity for pending fee applications filed pursuant to the FCAA's original waiver of sovereign immunity (as opposed, for example, to a future modification of that waiver), a clearer expression of such intent would have been a citation not to *CSPI,* but to *United States for Heydt v. Citizens State Bank,* 668 F.2d 444 (8th Cir. 1982), or *Knights of the KKK v. East Baton Rouge,* 679 F.2d 64 (5th Cir.1982), both of which dealt with the scope of the original

EAJA waiver enacted in 1981 and which are discussed immediately below.

The Court of Appeals for the District of Columbia Circuit in *CSPI* itself distinguished its earlier strict construction approach in *Nichols v. Pierce*, 740 F.2d 1249 (D.C.Cir. 1984), a case which, like ours, deals with an original waiver of sovereign immunity for purposes of EAJA applicability, by stating:

> [T]he concerns which prompted the courts to decline to apply retroactively the original EAJA to cases which were closed save for the fee petition are inapplicable in the context of the application of the [1985] ... Amendments. By virtue of the original EAJA, the Government has already expressly waived sovereign immunity from attorneys' fees in this case. The EAJA is no longer "temporary and experimental", but has been made permanent by the [1985] Amendments.

*CSPI*, 802 F.2d at 524 n. 11 (citations omitted).

In contrast, *Heydt* and *KKK*, although arising in the context of applying the original waiver contained in the 1980 EAJA, did not follow the strict construction approach as exemplified in *Nichols*, but, rather, held that "pending" cases included cases pending only on applications for fees. Because *Heydt* and *KKK* are more analogous than *CSPI* to the cases presently before the Court in that they arose in the context of an original waiver of sovereign immunity, a citation to one of them in the legislative history would better support appellants' position. Therefore, the Senate Judiciary Committee's choice of *CSPI* is, at best, ambiguous, and thus does not constitute "clearly expressed" legislative intent. *See Ardestani*, — U.S. at —, 112 S.Ct. at 520; *cf. M.A. Mortenson Co.*, 996 F.2d at 1181.

As the legislative history here cannot be seen as unambiguous, I agree with the ma-

jority's holding that, "for purposes of FCAA section 506 and the EAJA, the term 'case pending' [and 'appeal pending'] includes only cases pending before the Court on the merits on or after [the effective date of enactment of the FCAA]; it does not include cases in which the only matters pending before the Court [were] EAJA applications [on such date]." *Ante* at 107.

STEINBERG, Judge, dissenting:

I respectfully dissent from the holding of the majority because I believe the Court's opinion conflicts with applicable binding precedent of the Supreme Court[1] and the U.S. Court of Appeals for the Federal Circuit.[2] I agree basically with the analysis of applicable Supreme Court opinions set forth in Judge Kramer's concurring opinion. However, I conclude (1) that the plain meaning of the statute in question waived the Federal Government's sovereign immunity as to the 28 U.S.C. § 2412(d) attorney-fee applications of appellants Karnas and Jones that were pending in the Federal Circuit and this Court, respectively, on October 29, 1992; (2) that if the statute were not clear then recourse to its legislative history would be necessary; and (3) that the applicable legislative history shows clearly the intent of Congress to waive sovereign immunity as to these fee applications.

## I. Plain Meaning of the Statute

I agree with the majority that the inquiry regarding whether sovereign immunity has been waived as to a "case pending" in this Court or an "appeal ... pending" in the Federal Circuit must begin with the language of the statutory provision on which the appellants rely in contending that such a waiver has been made.[3] That language from section 506 of the Federal Courts Adminis-

---

**1.** *Comm'r, INS v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).

**2.** *M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1181 (Fed.Cir.1993); *Gavette v. OPM*, 808 F.2d 1456, 1467 (Fed.Cir.1986) (en banc).

**3.** "The starting point in statutory interpretation is the language [of the statute] itself." *Ardestani*

*v. INS*, — U.S. —, —, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991); *see Mortenson*, 996 F.2d at 1181. I agree with Judge Kramer in concluding that applicable precedents do not clearly establish that the inquiry must **end** with the statutory language. *See* the discussion *infra* part II.

tration Act (FCAA § 506) follows in its entirety:

### Sec. 506. Costs and Fees in the United States Court of Veterans Appeals.

(a) IN GENERAL.—Section 2412(d)(2)(F) of title 28, United States Code, is amended by inserting before the semicolon "and the United States Court of Veterans Appeals".

(b) APPLICATION TO PENDING CASES.— The amendment made by subsection (a) shall apply to any case pending before the United States Court of Veterans Appeals on the date of the enactment of this Act, to any appeal filed in that court on or after such date, and to any appeal from that court that is pending on such date in the United States Court of Appeals for the Federal Circuit.

FCAA, § 506, 106 Stat. 4513 (1992).

Subsection (a) of FCAA § 506 amends a definition in the Equal Access to Justice Act (EAJA) so as to include this Court (along with the Court of Federal Claims) in the definition of "court" in 28 U.S.C. § 2412(d)(2)(F).[4] There is agreement among the parties and within this Court that subsection (a) of section 506 constitutes a clear and unequivocal waiver of sovereign immunity as to this Court. However, there is much disagreement about the effect and scope of subsection (b) as to the meaning of the terms "case pending" and "appeal ... pending" "on the date of the enactment of [the FCAA]", October 29, 1992. For the reasons that follow in this part I., I conclude that the plain meaning of subsection (b) is that sovereign immunity has been waived as to any "case" or "appeal" pending on that date in either Court even though the only issue then pending was an EAJA attorney-fee application.

*A. Dictionary Definitions.* In determining the plain meaning of "case" and "appeal", a first resort would logically be to a dictionary to determine the accepted use of the terms used.[5] *Black's Law Dictionary* (6th ed. 1990) at pages 215 and 96 defines "case" and "appeal" as follows:

**Case.** A general term for an action, cause, suit, or controversy, at law or in equity; a question contested before a court of justice; an aggregate of facts which furnishes occasion for the exercise of the jurisdiction of a court of justice. A judicial proceeding for the determination of a controversy between parties wherein rights are enforced or protected, or wrongs are prevented or redressed; any proceeding judicial in its nature.

**Appeal.** Resort to a superior (*i.e.* appellate) court to review the decision of an inferior (*i.e.* trial) court or administrative agency. A complaint to a higher tribunal of an error or injustice committed by a lower tribunal, in which the error or injustice is sought to be corrected or reversed.

The above broad, inclusive definitions do not square with the majority's crabbed "strict construction" analysis. *Ante* at 103–04, 106.

*B. Nature of the "Case" and "Appeal" Here at Issue.* In enacting the FCAA § 506(a) express waiver of sovereign immunity as to EAJA's applicability to this Court, Congress explicitly vested this Court with jurisdiction to decide EAJA attorney-fee applications and to award attorney fees where authorized. It is *these* cases that are the sole subject of subsection (a), and it defies logical and contextual analysis to infer that subsection (b) deals with some other subject. In his opinion for the U.S. Court of Appeals for the District of Columbia Circuit in *Center for Science in the Public Interest (CSPI) v. Regan*, Judge Starr, in construing the term "case pending" in the 1985 EAJA Amendments, made this exact point, as follows: "The statute before us is exclusively concerned with attorneys' fees and fee petitions; as a result, the plain meaning of 'cases pending' in specifying the effective date of the fee

---

4. As amended, 28 U.S.C.A. § 2412(d)(2)(F) (West Supp.1993) provides: " 'court' includes the United States Claims Court [now the United States Court of Federal Claims] and the United States Court of Veterans Appeals".

5. *See Ardestani,* —— U.S. at ——, 112 S.Ct. at 520 ("the legislative purpose is expressed by the ordinary meaning of the words used") (quoting *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982)); *Hudson,* 490 U.S. at 890, 109 S.Ct. at 2257 (quoting *Black's* definition of "civil action"); *id.,* 490 U.S. at 894, 109 S.Ct. at 2259 (White, J., dissenting) (same).

statute 'presumably would be commonly understood to include pending fee applications.' " [6] Since in FCAA § 506(b) Congress elected to make the waiver applicable retroactively to cases already pending on the effective date, it requires a contorted construction to read "case" or "appeal" in subsection (b) as *not* referring to the very proceedings which Congress, in subsection (a), specifically authorized be brought in this Court.

## C. Binding Federal Circuit Precedent.

Precedent opinions of the Federal Circuit are binding on this Court unless clearly superseded by applicable Supreme Court opinions.[7] In a binding precedent opinion, *Gavette v. OPM*, 808 F.2d 1456, 1467 (Fed.Cir. 1986) (en banc), the U.S. Court of Appeals for the Federal Circuit was faced with the identical question now before us—whether the words "cases pending" in section 7(a) of the 1985 EAJA Amendments [8] applied to a case then pending in the court of appeals only on the issue of EAJA attorney fees and no longer pending on the underlying merits

of the appeal from the agency decision. As set forth in part I.F., below, the so-called "waiver" versus "clarification" distinction does not provide a valid basis for distinguishing the *Gavette* case from the case before us.

At the time the Federal Circuit decided *Gavette*, five other circuits had decided cases involving the meaning of "cases pending" in the 1985 Amendments; all had held, either explicitly or implicitly, that the term included a case pending on the EAJA-attorney-fee issue only.[9] In *Gavette*, the Federal Circuit held that the term "cases pending" applied "without distinction" to a "case" pending only on an EAJA fee application. Until some higher authority holds to the contrary, I believe this Court is bound by *Gavette.* Moreover, the Federal Circuit's position on the 1985 EAJA Amendments was followed by one other circuit within the year following *Gavette*, bringing the total number of circuits agreeing on this issue to seven, with only one, the Sixth Circuit, deciding to the contrary.[10]

---

**6.** *Center for Science in the Public Interest (CSPI) v. Regan*, 802 F.2d 518, 521–22 (D.C.Cir.1986) (quoting *Trahan v. Regan*, 625 F.Supp. 1163, 1164 (D.D.C.1985), in construing the 1985 EAJA Amendments, Pub.L. No. 99–80, § 7(a), 99 Stat. 183, 186 (1985)). The court further stated:

> As the Fifth Circuit aptly put it in addressing this issue, "[t]he phrase 'cases pending' makes no distinction between the fee application stage of a case and consideration of the merits." *Russell v. National Mediation Board*, 775 F.2d 1284, 1286 (5th Cir.1985); *Gavette v. Office of Personnel Management*, 785 F.2d 1568, 1578 (Fed.Cir.1986) [ (en banc) ] [*amended* 808 F.2d 1456 (Fed.Cir.1986) (en banc) ]. Both stages of litigation would seem to be encompassed by the statutory term. At all events, no such distinction is to be found in the language of the statute itself.

*Ibid.* This analysis in *CSPI* was cited with approval and followed by Judge Breyer for the First Circuit in *United States v. 6.93 Acres of Land*, 852 F.2d 633, 634–35 (1st Cir.1988) (also citing *Russell* and *Gavette* in concluding that "the language of the new law itself says that it applies"), which was in turn cited with approval and followed by the 10th Circuit in *United States v. 1002.35 Acres of Land*, 942 F.2d 733, 736 (10th Cir.1991) ("the 1985 Amendments expressly provide[] that the Amendments shall apply to pending cases ..., including cases where the fee petition was the only remaining item on the docket when the Amendments were enacted").

**7.** *See* 38 U.S.C.A. § 7292(c), (d), (e) (West 1991); *Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1991)

("binding precedent" as to this Court includes "a decision of the ... Federal Circuit"); *see also Jones (McArthur) and Karnas v. Derwinski*, 2 Vet. App. 231, 234 (1992) (en banc) (Federal Circuit decision "is of extreme importance because some of our decisions, and possibly this one on the interpretation of the EAJA, are subject to review by the Federal Circuit (38 U.S.C.[A.] § 7292)"), *vacated* as to appellant Karnas, *Karnas v. Principi*, 985 F.2d 582 (Fed.Cir.1992); *Dudley v. Derwinski*, 2 Vet.App. 602, 603 (1992) (en banc) (expressly confirming panel holding in *Jones (Ponce)*, 2 Vet.App. 362, 363 (1992), that Federal Circuit precedent opinion in *Butler v. Derwinski*, 960 F.2d 139, 141 (Fed.Cir.1992), had overruled a prior precedent of this Court in *Elsevier v. Derwinski*, 1 Vet.App. 150, 154 (1991)).

**8.** Pub.L. No. 99–80, § 7(a), 99 Stat. 183, 186 (1985).

**9.** *Fulton v. Heckler*, 784 F.2d 348, 349 (10th Cir.1986); *United States v. Kemper Money Market Fund, Inc.*, 781 F.2d 1268, 1270 n. 1 (7th Cir. 1986); *Trust Co. of Columbus v. United States*, 776 F.2d 270, 271–72 (11th Cir.1985) (by implication); *United States v. Yoffe*, 775 F.2d 447, 448–49 (1st Cir.1985) (by implication); *Russell v. National Mediation Bd.*, 775 F.2d 1284, 1286 (5th Cir.1985).

**10.** *McQuiston v. Marsh*, 790 F.2d 798, 800 (9th Cir.1986) (following *Gavette* ). *Contra Blackmon v. United States*, 807 F.2d 70, 74 (6th Cir.1986).

At the time *Gavette* was being decided, there was a split in the courts of appeals over the identical question of the meaning of the synonymous term,[11] "civil action ... pending", in the effective date provision enacted in the original 1980 EAJA[12]. The Fifth and Eighth Circuits had decided for retroactive applicability[13], and the Ninth, District of Columbia, and Seventh Circuits had decided against retroactive applicability[14], when all that was pending on that effective date was an EAJA fee application. As concluded immediately below in part I.D., this split of authority was effectively resolved by the Supreme Court's 1990 opinion in the *Jean* case. The binding *Gavette* holding thus provides a further basis for rejecting the majority's position that the plain meaning of "case pending" and "appeal ... pending" in FCAA § 506(b) does not include the instant EAJA fee applications. Moreover, the Federal Circuit has recently reaffirmed this holding in *Gavette*.[15]

**D. Textual Analysis.** Indeed, a thorough examination of the key statutory words and the context in which they are used supports the above plain-meaning conclusion. It seems quite clear that the term "case" as

used in FCAA § 506(b) is the equivalent of "civil action" as used in EAJA. Specifically, EAJA § 2412(d)(1)(A) provides in pertinent part that "a court shall award to a prevailing party ... fees and other expenses, ... incurred by that party in any *civil action ..., including proceedings for judicial review of agency action,* brought by or against the United States in any court having jurisdiction of that action...." 28 U.S.C.A. § 2412(d)(1)(A) (West Supp.1993) (emphasis added). Since EAJA uses the term "case" or "cases" and the term "appeal" or "appeals" in only two places ("cases" once and "appeals" once) and both uses reflect that the terms are subsumed within the term "civil action", the FCAA's use of "case" to refer to EAJA proceedings must be synonymous with EAJA's use of "civil action".[16] The following analysis demonstrates that the term "civil action" in EAJA applies to the EAJA-fee-application portion of the case as well as the underlying case decided on its merits.

**1. Textual analysis in light of case law:** First, two recent Supreme Court opinions, *Comm'r, INS v. Jean* and *Sullivan v. Hudson,* have eschewed a restrictive interpretation of the term "civil action" in the EAJA

---

11. *See* discussion *infra* part I.D. of the text.

12. Section 208 of the 1980 EAJA provided:

This title and the amendments made by this title shall take effect on October 1, 1981, and shall apply to any adversary adjudication, as defined in section 504(b)(1)(C) of title 5, United States Code, and any civil action or adversary adjudication described in section 2412 of title 28, United States Code, which is pending on, or commenced on or after, such date.

Pub.L. No. 96–481, § 208, 94 Stat. 2325 (1980).

13. *Knights of the Ku Klux Klan v. East Baton Rouge Parish School Bd.,* 679 F.2d 64, 67–68 (5th Cir.1982); *United States for Heydt v. Citizens State Bank,* 668 F.2d 444, 446 (8th Cir.1982).

14. *Tongol v. Donovan,* 762 F.2d 727, 732 (9th Cir.1985); *Nichols v. Pierce,* 740 F.2d 1249, 1256 (D.C.Cir.1984); *Commissioners of Highways v. United States,* 684 F.2d 443, 444–45 (7th Cir. 1982). *See also Blackmon v. United States,* 807 F.2d 70, 73–75 (6th Cir.1986) (later adopting *Nichols* and *Tongol* reasoning as applied to the 1985 Amendments).

15. *See Chiu v. United States,* 948 F.2d 711, 713 (Fed.Cir.1991) (referring to prior remand of case, *Chiu v. United States,* 887 F.2d 1094 (Fed.Cir.

1986), in order for the Claims Court to apply 1985 amendment to case pending only on EAJA fee application when amendment enacted, *see* 948 F.2d at 711 n. 1).

16. 28 U.S.C.A. § 2412(d) (West Supp.1993) (emphasis added) provides in subparagraphs (1)(A) and (2)(E):

(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any *civil action (other than cases sounding in tort),* including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(E) *"civil action* brought by or against the United States" *includes an appeal* by a party, other than the United States, from a decision of a contracting officer rendered pursuant to a disputes clause in a contract with the Government or pursuant to the contract Disputes Act of 1978....

*See generally,* for EAJA's use of "civil action", 28 U.S.C.A. § 2412(a), (b), (d) (West Supp.1993).

context and have adopted expansive definitions of the term. In *Jean,* a unanimous Supreme Court held that a "civil action" under EAJA included all aspects of a particular piece of litigation, from the merits decision, through the EAJA application, to and including the EAJA application for "fees for fees"—the latter being the right of the successful EAJA applicant to receive EAJA fees to cover its litigation of the right to EAJA fees. In so holding, *Jean* rejected the position of the Attorney General that the United States should be liable for "fees for fees" only if the "position of the United States" on the basic EAJA entitlement issue were not "substantially justified". 28 U.S.C.A. § 2412(d)(1)(A) (West Supp.1993); *Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 2319 (1990). The Court further held: "Any given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." [17]

In *Hudson,* the Supreme Court held that nonadversarial proceedings in a Social Security case that were conducted pursuant to a federal court remand to the administrative agency were "an integral part of the 'civil action' for judicial review and thus EAJA attorney fees for representation on remand are available subject to the other limitations in the EAJA." [18] *Hudson,* 490 U.S. 877, 892, 109 S.Ct. 2248, 2258 (1990). The *Hudson* Court adopted this expansive reading despite the express provision in EAJA authorizing

attorney fees in agency administrative adjudicatory proceedings only for representation in an "adversary adjudication". [19] 5 U.S.C.A. § 504(a)(1) (West Supp.1993). [20] As discussed in part II.B., below, the legislative history shows that the Senate intended FCAA § 506 to be applied to this Court in a way consistent with "the principles of" *Hudson.* [21]

Quite clearly, the Supreme Court in *Jean* and *Hudson* was not constrained by notions of "strict construction of waivers of sovereign immunity", *ante* at 103–04, 106 (quoting from *Ardestani v. INS,* —— U.S. ——, ——, 112 S.Ct. 515, 521 (1991)), to adopt a narrow reading of "civil action". Moreover, under the holding of *Jean* set forth above, an EAJA "civil action" includes all of the parts of that litigation: merits; EAJA applicability; and "fees for fees". [22] Hence, if "case" is synonymous with "civil action", then the pendency of any of the portions of the case on October 29, 1992, triggers the applicability of FCAA § 506. The Supreme Court's holding and analysis in *Jean* effectively resolved the split of authority discussed in part I.B., above, in the courts of appeals over whether the terms "case pending" in the 1985 EAJA Amendments, or "civil action ... pending" in the 1980 EAJA, covered cases pending only on an EAJA attorney-fee application. They do.

Moreover, when Congress used the term "case" in 1992 in FCAA § 506(b), it is presumed, according to Supreme Court and Federal Circuit precedent, to have been "knowledgeable about existing [statutory and case] law pertinent to the legislation it en-

---

17. *Jean,* 496 U.S. at 160, 110 S.Ct. at 2320.

18. Although a portion of *Hudson's* holding (relating to remands ordered by district courts pursuant to sentence four of Social Security Act section 405(g)) may be considered to have been overruled in part by dictum in *Shalala v. Schaefer,* —— U.S. ——, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), the Supreme Court there took pains to point out, in response to the dissenting opinion of Justice Stevens, that "*Hudson* remains good law as applied to remands ordered pursuant to sentence six [of § 405(g)]." *Schaefer,* —— U.S. at ——, 113 S.Ct. at 2631 n. 4.

19. *See also* 28 U.S.C.A. § 2412(d)(3) (West Supp. 1993), which empowers a court "to award fees

for representation before an agency to a party who prevails in an action for judicial review to 'the same extent authorized in [5 U.S.C. § 504(a)].'" *Hudson,* 490 U.S. at 890, 109 S.Ct. at 2257. An adversary adjudication is defined as one in which "the position of the United States is represented by counsel or otherwise". 5 U.S.C.A. § 504(d)(3) (West Supp.1993).

20. *Hudson,* 490 U.S. at 890, 109 S.Ct. at 2257.

21. S.Rep. No. 342, 102d Cong., 2d Sess. 39 (1992).

22. *See* quotation from *Jean* in text, *ante* at 114, note 17.

act[ed]." [23]  Hence, Congress must be assumed to have legislated in 1992 with full knowledge of the Supreme Court's 1990 EAJA holding in *Jean*, and of the effect of that holding in resolving the prior split of authority in the courts of appeals over the extent of EAJA's retroactive applicability.

**2. Contextual analysis of FCAA:** Second, an examination of the FCAA for other uses of "case" or "appeal" lends further support to the above plain meaning of those terms in FCAA § 506(b). In FCAA § 102(d), Congress provided for the abolition of the Temporary Emergency Court of Appeals (TECA) six months after the FCAA's enactment.[24]  Under FCAA § 102(e)(1), entitled "PENDING CASES", any unempaneled "appeal" then pending in TECA was to be as-

signed to the Federal Circuit.[25]  The FCAA Senate Judiciary Committee report explained that the legislation "vested [the TECA's] remaining caseload" in the Federal Circuit.[26]  It seems highly unlikely that Congress extinguished the EAJA rights of the parties in unempaneled EAJA-fee applications pending in TECA upon that court's abolition.[27]  And if FCAA § 102(e)(1) applied to such pending "cases", then, under the "normal rule of statutory construction that 'identical words used in different parts of the same act are intended to have the same meaning' ",[28] the identical term in FCAA § 506(b) should be held to have the same meaning.

**E. Cautionary Principle Not to Narrow Waiver Once Made.** In determining the meaning of § 506(b), we should also heed the

---

**23.** *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85, 108 S.Ct. 1704, 1711–12, 100 L.Ed.2d 158 (1988) (state statutory law); *accord Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990) (federal statutory law); *U.S. Dep't of Labor v. Perini North River Assoc.*, 459 U.S. 297, 319–20, 103 S.Ct. 634, 648, 74 L.Ed.2d 465 (1983) (case law); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979) (case law); *V.E. Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1581 (Fed.Cir. 1990) (case law), *cert. denied*, 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991).

**24.** Federal Courts Administration Act (FCAA), § 102(d), 106 Stat. 4506, 4507 (1992) (providing for the abolition of TECA six months after the October 29, 1992, enactment of the FCAA).

**25.** FCAA, § 102(e), 106 Stat. 4506, 4507 (1992). As to appeals which had been assigned to a panel on the effective date of the TECA's abolition, the TECA panel was assigned to the Federal Circuit "for the purpose of deciding the case". FCAA, § 102(e)(2), 106 Stat. 4506, 4507 (1992). The full text of section 102(e) reads:

(e) PENDING CASES.—(1) Any appeal which, before the effective date of abolition described in subsection (d), is pending in the Temporary Emergency Court of Appeals but has not been submitted to a panel of such court as of that date shall be assigned to the United States Court of Appeals for the Federal Circuit as though the appeal had originally been filed in that court.

(2) Any case which, before the effective date of abolition described in subsection (d), has been submitted to a panel of the Temporary Emergency Court of Appeals and as to which the mandate has not been issued as of that date shall remain with that panel for all purposes and, notwithstanding the provisions of sections

291 and 292 of title 28, United States Code, that panel shall be assigned to the United States Court of Appeals for the Federal Circuit for the purpose of deciding such a case.

**26.** The Senate Committee report stated:

Whatever may have been the value of the [TECA] in earlier years, its caseload is now so small as to justify its abolition.... Section 103 of S. 1569 encompasses the Federal Courts Study Committee recommendation found on page 73 of the Study Committee Report. It would abolish TECA and vest its remaining caseload in the Court of Appeals for the Federal Circuit.

S.Rep. No. 342, 102d Cong., 2d Sess. 25 (1992).

**27.** EAJA fees clearly are available in cases that were appealed to TECA. *See Consumers Power Co. v. Dep't of Energy*, 894 F.2d 1571, 1578–82 (Temp.Emer.Ct.App.1990).

**28.** *Sullivan v. Shoop*, 496 U.S. 478, 484, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990) (quoting *Sorenson v. Secretary of the Treasury*, 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986), and long line of Supreme Court precedent to the same effect); *see also United States v. Nordic Village, Inc.*, —— U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) (statute must be construed in such fashion that every word has some operative effect); *Hellebrand v. Secretary of HHS*, 999 F.2d 1565, 1571 (Fed.Cir.1993) (same); *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 942 (Fed.Cir.1993) (to same effect); *In re Fee Agreement of Smith*, 4 Vet.App. 487, 493 (1993) ("each part or section should be construed in connection with every other part or section so as to produce a harmonious whole"); *Leopoldo v. Brown*, 4 Vet.App. 216, 219 (1993) (quoting *Talley v. Derwinski*, 2 Vet. App. 282, 286 (1992), to the same effect).

Supreme Court's oft repeated injunction, which originated in *United States v. Kubrick,* and was recently reaffirmed by the Supreme Court in three sovereign immunity cases [29], that "once Congress has waived sovereign immunity over certain subject matter the Court should not 'assume the authority to narrow the waiver that Congress intended.'" *Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57 (1979). The Court in *Ardestani* cited the following cases as examples of those which had approached sovereign immunity waivers through the application of that cautionary principle: *Kubrick, supra; Hudson, supra,* discussed extensively in part II.C., below, and *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).[30] It could also have cited to *Jean, supra,* in which a unanimous Supreme Court had twice cited *Hudson* in support of its expansive reading of the term "civil action" in EAJA.

In the context of FCAA § 506, there can be no doubt that subsection (a) of that section waived sovereign immunity as to suits against the Department of Veterans Affairs to recover fees under EAJA for representation before this Court. This Court should follow the cautionary principle set forth in *Kubrick, Irwin,* and the three recent Supreme Court cases and take care not "to assume the authority to narrow the waiver that Congress intended." [31] The question before this Court, then, is the scope or extent of the FCAA § 506(a) unequivocally expressed waiver of sovereign immunity.

**F.  Original Waiver v. Clarification.** With regard to determining the plain meaning of the statute, I do not place great reliance on the distinction discussed by the majority, *ante* at 103–07, and by Judge Kramer, *ante* at 109–10, that has been characterized as one between "a waiver of sovereign immunity" and an amendment "intended merely to 'clarify' the original EAJA".[32] The problem with this waiver/clarification distinction is that once a waiver of sovereign immunity has been established through EAJA all amendments to it could be considered, in the narrowest sense, "clarifying" rather than "new" waivers; and, in the broadest sense, every amendment permitting an EAJA recovery where one would not have been available absent that amendment could be considered a "new" waiver of sovereign immunity as to the particular recovery permitted on the basis of that amendment. It is quite possibly in the former, narrow sense that the 1992 House and Senate Judiciary Committee reports referred to FCAA § 506 as an amendment intended to "clarify".[33] *See* the discussion *infra* part II.B. and note 41.

---

**29.**  *United States v. ex rel. Director, Idaho Dep't of Water Resources,* —— U.S. ——, ——, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (May 3, 1993); *Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 1178, 1183, 122 L.Ed.2d 548 (March 8, 1993); *Ardestani v. INS,* —— U.S. ——, ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (December 10, 1991). *See also Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990) (citing *Bowen v. City of New York,* 476 U.S. 467, 479, 106 S.Ct. 2022, 2029, 90 L.Ed.2d 462 (1986) for this principle).

**30.**  In *Irwin,* the Supreme Court held expressly in 1990 that principles of equitable tolling applicable in suits between private litigants were applicable in suits against the United States that invoke time requirements. The Court there stated:

> Once Congress has made such a waiver [of sovereign immunity], we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, *amounts to little, if any, broadening of the congressional waiver.* Such a principle is likely to be a *realistic assessment of legislative intent* as well

as a practically useful principle of interpretation.
*Irwin,* 498 U.S. at 95, 111 S.Ct. at 457 (emphasis added).

**31.**  *See* discussion *infra* in part II.B. of the text about determining what Congress "intended".

**32.**  *See Schultz v. Crowley,* 806 F.2d 281, 282 (D.C.Cir.1986), *denying reh'g and reh'g en banc of* 802 F.2d 498 (D.C.Cir.1986) (two panel judges characterized the 1985 EAJA Amendments as intended to "clarify" as compared with making a waiver of sovereign immunity); *see also American Pacific Concrete Pipe Co. v. NLRB,* 788 F.2d 586, 589 (9th Cir.1986) (distinguishing among parts of 1985 EAJA Amendments as to whether they involved new waivers of sovereign immunity or "clarifying" amendments). *See* cases cited *infra* note 34.

**33.**  H.R.Rep. No. 102–1006, 102d Cong., 2d Sess. 25, reprinted in 1992 U.S.C.C.A.N. 3921, 3934 (1992); S.Rep. No. 342, 102d Cong., 2d Sess. 39 (1992). *See* quotations *infra* in part II.B. of the text.

In this regard, it should be remembered that the 1985 EAJA Amendments, which some courts have characterized generally as "clarifying",[34] enacted two specific "new" waivers of sovereign immunity. The first, which was far greater than the three-year waiver made in the 1980 original EAJA enactment, was a permanent, in perpetuity waiver applicable after the date of the enactment of the 1985 Amendments. The second was a retroactive waiver from the date of the enactment of the 1985 Amendments back to October 1, 1984, the day after the original three-year EAJA had expired. I thus find the quote in Judge Kramer's opinion from footnote 11 in *CSPI*, which makes an explicit distinction between the enactment of EAJA in 1980 and of the 1985 Amendments, unavailing. *Ante* at 109–10 (citing 802 F.2d at 524 n. 11).[35]

*G. "Plain Meaning" Conclusion.* For the foregoing reasons, I conclude that, if the majority is correct that the waiver of sovereign immunity as to the pending fee applications must be clear and unequivocal on the face of the statute itself (I do not so conclude, as explained in part II., below), FCAA § 506(b) does clearly and unequivocally express a waiver of sovereign immunity as to the pending attorney-fee applications.

## II. Legislative History

If I were to conclude, which I do not, that the plain meaning of the statute did not waive sovereign immunity as to the two pending fee applications, then I would agree with Judge Kramer that it is necessary to examine the FCAA's legislative history to determine whether such a waiver was made. *Ante* at 109. Upon such examination, I find that Congress clearly intended to waive sovereign immunity for the categories of cases into which our two appellants fall.

I start by noting again that we are bound by Federal Circuit rulings unless we conclude that they have been clearly superseded by applicable Supreme Court opinions.[36] Although, as noted in part I.C., I believe that the Federal Circuit has authoritatively decided the very issue at question here, another, more recent Federal Circuit decision provides authoritative guidance with regard to the question of the role of legislative history in statutory interpretation of EAJA (28 U.S.C.A. § 2412(b) (West Supp.1993)). On June 9, 1993, the Federal Circuit, in finding "the requisite waiver of sovereign immunity for an award of attorney fees against the United States" under EAJA, expressly relied on extensive analyses of EAJA legislative history and laid down the following rules for interpreting statutory language and specifically EAJA. *M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1184 (Fed.Cir.1993). The court stated:

> Where the language of a statute is clear, the plain meaning of the language governs interpretation thereof: "[T]he starting point for interpreting a statute is the lan-

---

34. *See, e.g., CSPI*, 802 F.2d at 523–24; *Russell*, 775 F.2d at 1288; *American Pacific*, 788 F.2d at 588–90.

35. There was at least one other "new" waiver of sovereign immunity in the 1985 EAJA Amendments—an amendment increasing from $5 to $7 million the net-worth ceiling in 28 U.S.C.A. § 2412(d)(2)(B) above which an entity could not qualify for EAJA fees. Pub.L. No. 99–80, § 1(c)(1), 99 Stat. 183, 183 (1985). *See American Pacific*, 788 F.2d at 588–90 (holding, after close scrutiny of legislative history, that the increased ceiling was "an expansion of eligibility to new claimants" rather than a clarifying amendment as in *Russell, supra* note 34, and thus did not apply to a "pending" case).

One other provision in the 1985 EAJA Amendments was also arguably a waiver. That is the provision adding to EAJA a definition of "prevailing party" in eminent domain cases (28 U.S.C.A.

§ 2412(d)(2)(H)), Pub.L. No. 99–80, § 2(c)(2)(H), 99 Stat. 183, 185 (1989). Prior to the 1985 Amendments, "the [federal] courts were divided as to whether and how the EAJA applied to landowners in eminent domain proceedings [citing authorities]." *6.93 Acres of Land*, 852 F.2d 633, 636 (1st Cir.1988). Although at least one circuit concluded that the 1985 Amendment was "clarifying" and therefore applicable to cases pending only on EAJA fee applications, *6.93 Acres of Land*, 852 F.2d at 634–35, the facts of that case did not raise a question of an expansion of a sovereign immunity waiver since the applicant there failed to meet the new statutory definition, and fees, therefore, were denied by the First Circuit. *Accord 1002.35 Acres of Land*, 942 F.2d 733, 736 (10th Cir.1991).

36. *See supra* note 7.

guage of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2055, 64 L.Ed.2d 766 (1980). *Where congressional intent would be thwarted absent reference to the legislative history, however, it is permissible to look beyond the specific language used, especially recognizing the Supreme Court's guidance that the EAJA be interpreted "in light of [the EAJA's] manifest purpose."* Sullivan, Secretary of Health & Human Servs. v. Hudson, *490 U.S. 877, 890, 109 S.Ct. 2248, 2257, 104 L.Ed.2d 941 (1989).* **This is no less true when attempting to determine the scope of the government's waiver of sovereign immunity.** *See, e.g., McDonald's Corp. v. United States,* 926 F.2d 1126, 1129–32 (Fed.Cir.1991) (rejecting the government's position that the plain language of 28 U.S.C. § 1491 must be interpreted without resort to the legislative history of the Tucker Act; *Congress' intent was clearly evidenced from the legislative history,* and would have been frustrated by a technical reading of the statutory language).

The present case is representative of a situation in which congressional intent is clear, even though imprecisely couched in the statutory phraseology of section 2412(b). *The legislative history of the EAJA and the circumstances surrounding the passage thereof demonstrate that the drafters explicitly contemplated recovery of attorney fees against the government under circumstances other than*

*those narrowly revealed by the "terms of the statute" language.*

*Mortenson,* 996 F.2d at 1181 (emphasis added). The applicability of these rules to the situation before us could not be more clear.

I agree with Judge Kramer's concurring opinion that recent Supreme Court precedents are confusing and ambiguous on the role of legislative history in determining whether waivers of sovereign immunity have been made by various enactments, and have not excluded resort to such history. *Ante* at 109. Hence, I believe that this Court is bound by the Federal Circuit's express and very specific rules for interpreting EAJA even though the Circuit did not cite all applicable Supreme Court precedent.[37] Indeed, I also believe, as suggested by Judge Kramer in his concurring opinion, *ibid.,* that the majority's analysis falls short in stopping with the Supreme Court's 1991 *Ardestani* and 1992 *United States v. Nordic Village, Inc.,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), opinions [38] and not treating the 1993 Supreme Court precedents which cite the interpretative principles of *Kubrick* applicable to determining waivers of sovereign immunity. In a case decided on March 8, 1993, the Supreme Court stated:

A recent statement of this sort, *and the one to which we now adhere,* is found in *United States v. Kubrick,* 444 U.S. 111, 117–18, 62 L.Ed.2d 259, 100 S.Ct. 352 (1979): "We should also have in mind that the Act waives the immunity of the United States and that ... we should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the au-

---

**37.** It did not cite, in order of recency: *Idaho,* —— U.S. ——, ——, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (1993); *Smith,* —— U.S. ——, ——, 113 S.Ct. 1178, 1183, 122 L.Ed.2d 548 (1993); *U.S. Dep't of Energy v. Ohio,* —— U.S. ——, ——, 112 S.Ct. 1627, 1635, 118 L.Ed.2d 255 (1992); *Nordic Village,* —— U.S. ——, ——, 112 S.Ct. 1011, 1016, 117 L.Ed.2d 181 (1992); or *Ardestani,* —— U.S. at ——, 112 S.Ct. at 515, 521 (1991). Although not cited in *Mortenson, Nordic Village* was cited by the Federal Circuit in two opinions issued shortly after *Mortenson,* for the proposition that "a statute is to be construed in a way which gives meaning and effect to all of its parts." *Hellebrand,* 999 F.2d 1565, 1571 (Fed.

Cir.1993). *See also Genentech,* 998 F.2d 931, 942 (Fed.Cir.1993) ("statute must be interpreted to give effect to each of its provisions").

The Federal Circuit's resort, in *Mortenson,* to legislative history to determine the intent of various fee-shifting statutes, including EAJA, is not an isolated example of Federal Circuit jurisprudence. The Federal Circuit delved extensively into such legislative history in *Gavette,* 808 F.2d at 1464–65, in 1986 and did so again as to EAJA in 1988 in *Naekel v. Dep't of Transp.,* 845 F.2d 976, 981 (Fed.Cir.1988).

**38.** *See supra* note 37.

thority to narrow *the waiver that Congress intended."*

*Smith v. United States,* ―― U.S. ――, ――, 113 S.Ct. 1178, 1183, 122 L.Ed.2d 548 (1993) (citations omitted) (emphasis added). *See also United States v. ex rel. Director, Idaho Dep't of Water Resources,* ―― U.S. ――, ――, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (May 3, 1993). Moreover, *Ardestani,* so heavily relied upon by the majority, also quoted *Kubrick* to this effect.[39]

I believe it is incontestable that the customary way to determine what Congress "intended" is by examining legislative history. Turning, then, to the legislative history of FCAA § 506, for the following reasons I disagree with Judge Kramer's assessment that it "cannot be seen as unambiguous". *Ante* at 110.

**A. Unequivocal Legislative History.** As to waivers of sovereign immunity, I assume, as Judge Kramer suggests in his opinion, that the legislative history as to Congressional intent needs to be "unequivocal" if the statutory text is not.[40]

**B. Committee Reports.** The entire FCAA § 506 legislative history is set forth below.

The Senate Judiciary Committee, which reported the FCAA on July 27, 1992, stated:

A March 13, 1992, decision of the United States Court of Veterans Appeals (court), in *Jones and Karnas v. Derwinski,* denied the right of plaintiffs to recover attorney fees under the Equal Access to Justice Act (EAJA). This ruling has resulted in a substantial burden on veterans bringing cases to the court, aggravating the situation in which a majority of cases are being brought pro se, thereby creating additional work for the court.

The objective of EAJA is to eliminate financial deterrents to individuals attempting to defend themselves against unjustified Government action. Veterans are exactly the type of individuals the statute was intended to help. Therefore, section 508 [enacted as section 506] amends EAJA to *clarify* that it applies to the Court of Veterans Appeals, *overruling* the *Jones and Karnas* decision.

The Committee intends to make clear that EAJA applies to the court to the full extent of the law, including *the principles* contained in *Sullivan v. Hudson,* and *Center for Science in the Public Interest v. Regan.*

The intent of section 508 is to *clarify* the inclusion of the Court of Veterans Appeals as a "court" for purposes of EAJA. It is not the intent of the committee, by specifying the Court of Veterans Appeals, to exclude any other nonarticle III courts having jurisdiction of an action from qualifying as a "court" under EAJA.

S.Rep. No. 342, 102d Cong., 2d Sess. 39 (1992) (footnotes omitted) (emphasis added).

The House Judiciary Committee then stated in its report, filed on October 3, 1992:

A March 13, 1992, decision of the United States Court of Veterans Appeals, *Jones v. Derwinski,* denied the right of plaintiffs to recover attorneys' fees under the Equal Access to Justice Act (EAJA). This ruling has resulted in a substantial burden on veterans bringing cases to the court and has resulted in a majority of cases being brought *pro se,* creating additional work for the court.

The objective of EAJA is to eliminate financial deterrents to individuals attempting to defend themselves against unjusti-

---

**39.** *Ardestani,* ―― U.S. at ――, 112 S.Ct. at 520. Indeed, in *Jean,* 496 U.S. at 162–165 n. 14, 110 S.Ct. at 2321–22, 2322 n. 14, the Supreme Court reviewed the EAJA legislative history in reaching its unanimous conclusion. So did the Court in *Kubrick,* 444 U.S. at 267 n. 6, 100 S.Ct. at 549 n. 6. And in *Irwin,* 498 U.S. at 95, 111 S.Ct. at 457, fully quoted *supra* note 30, the Court referred to its "little, if any, broadening of the congressional waiver" of sovereign immunity as "likely to be a realistic assessment of legislative intent."

**40.** The Federal Circuit, in the extensive quote above from its binding precedent opinion in *Mortenson, ante* at 117–18, may have indicated that legislative history must be "clear". 996 F.2d at 1181. Likewise, the Supreme Court in *Smith,* ―― U.S. at ――, 113 S.Ct. at 1183, noted in passing that the plaintiff had not asserted "clear evidence of congressional intent". However, neither court *held* that unequivocal legislative history on the question of congressional intent was necessary to establish a waiver of sovereign immunity.

fied government action. Veterans are among the types of individuals the statute was intended to help. Therefore, section 508 [enacted as section 506] amends EAJA and *clarifies* that it applies to the Court of Veterans Appeals.

H.R.Rep. No. 102–1006, 102d Cong., 2d Sess. 25 (1992), U.S.Code Cong. & Admin.News pp. 3921, 3934 (emphasis added).

I find that these authoritative expositions of the congressional committees of jurisdiction clearly express the following congressional intent: (1) to treat FCAA § 506 as "clarifying", rather than making, a waiver of sovereign immunity; (2) to overrule the March 1992 decision in the instant case, 2 Vet.App. 231 (1992); and (3) to adopt "the *principles* of" *CSPI* and *Hudson* in the application of EAJA to proceedings in this Court (emphasis added).

As to whether subsection (a) of section 506 was a clarification rather than a "new" waiver for purposes of the caselaw discussed in part I.F., above, I must conclude that the Committees were in the main not correct in their characterizations. As we held in the instant case in 1992, no "unambiguous" waiver of sovereign immunity was enacted in the 1988 Veterans' Judicial Review Act (VJRA) as to the applicability of EAJA in this Court. *Jones (McArthur) and Karnas v. Derwinski,* 2 Vet.App. 231, 234 (1992). However, that does not mean that the Committees were altogether wrong; subsection (b) could certainly be considered to be a "clarification" of the applicability of the waiver being provided in subsection (a). And in that sense an analysis of the language in the Committee reports invokes the caution of *Kubrick, Irwin, Ardestani, Smith,* and *Idaho, ex rel.,* that "once Congress has waived sovereign immu-

nity over certain subject matter, the Court should be careful not to 'assume the authority to narrow the waiver that Congress intended.' " *Ardestani,* —— U.S. at ——, 112 S.Ct. at 520 (quoting *Kubrick* ).[41] Moreover, it is significant that both Committees considered the amendment as one to "clarify" in the sense that that term was used in *CSPI,* the "principles" of which, according to the Senate Committee, were to govern the applicability of EAJA to this Court's proceedings.

Most fundamentally, I do not agree with Judge Kramer that the Senate Committee's reference to "the principles" of *CSPI* and *Hudson* is ambiguous in terms of the Committee's intent. CSPI stands for the "principle", as contrasted with its strict holding, that the "straightforward" reading of "case" in the 1985 Amendments effective-date provision includes cases pending only on fee applications when those amendments were enacted.[42] The *CSPI* case arguably involved a "clarifying" amendment rather than an original waiver of sovereign immunity, and the Senate and House Committees classified their 1992 FCAA actions (although somewhat inaccurately) as clarifying also.[43] Moreover, one of "the principles" involved in *Hudson* was that "civil action" in EAJA should be "read in light of ... [EAJA's] purpose 'to diminish the deterrent effect of seeking review of, or defending against, governmental action' ".[44] Accordingly, I conclude that the language of the legislative history regarding the "*principles* contained in" *CSPI* and *Hudson* evidences clear legislative intent that the fee applications in question were to be included in the FCAA § 506(b) statutory phrases "case pending" and "appeal ... pending" (emphasis added).

---

**41.** I think that the Committees may also have been using "clarify" in the sense of making express what the floor managers in both houses had expressly stated, in the October 1988 debate prior to final passage of the Veterans' Judicial Review Act compromise legislation, that "it is clear that the Equal Access to Justice Act ... is applicable to VA benefit cases determined in Federal Court.... It is applicable on its face to VA benefit determinations made by either the Court of Veterans Appeals or the Court of Appeals for the Federal Circuit." 134 Cong.Rec.

31789 (1988) (statement of Rep. Edwards); *see also* 134 Cong.Rec. 31473 (1988) (statement of Sen. Cranston).

**42.** *CSPI,* 802 F.2d at 522.

**43.** *But cf.* discussion *supra* in text at part I.F.

**44.** *Hudson,* 490 U.S. at 890, 109 S.Ct. at 2257 quoting the statutory Congressional Findings and Purposes of the 1980 EAJA section 1(c)(2) (found at 5 U.S.C.A. § 504 note (West Supp.1993)).

## III. Conclusion

Focusing expressly on the fee applications of our two appellants, Mr. Jones' EAJA attorney-fee application was pending here on October 29, 1992, and Mr. Karnas' was pending in the Federal Circuit on that date. Given the binding Supreme Court and Federal Circuit precedent, the plain meaning of FCAA § 506 in which the Congress decided to provide expressly for retroactive application of EAJA eligibility, and the stated congressional intentions of "overriding the [1992] *Jones* and *Karnas* decisions" by this Court and that "the principles" of *CSPI* and *Hudson* are to govern the application of EAJA in this Court, the majority has reached the erroneous conclusion that Congress intended to deny to appellants the benefit of the very law that their litigation was responsible for producing. I, therefore, am constrained to dissent from the Court's dismissal of these EAJA applications.